A06A0839. JOHNSON v. FORD MOTOR COMPANY et al.
A06A0840. TEXAS INSTRUMENTS, INC. v. JOHNSON.
A06A0841. FORD MOTOR COMPANY v. JOHNSON.
(637 SE2d 202)

ANDREWS, Presiding Judge.

These three cases are before us on Texas Instruments, Inc.'s and Ford Motor Company's motions for summary judgment on Mable Johnson's claim for property damage as a result of a fire. The fire started in a car parked in Johnson's neighbor's carport and then spread to Johnson's house. The trial court denied in part and granted in part Ford's and Texas Instruments' motions for summary judgment on Johnson's claims of negligent manufacture, strict liability, and failure to warn. For reasons that follow, we reverse in part and vacate and remand in part.

On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Owens v. Gen. Motors Corp.*, 272 Ga. App. 842, 844 (613 SE2d 651) (2005).

The underlying facts are undisputed. The fire started in a 1993 Lincoln Town Car while it was parked in the carport of Johnson's next door neighbors, the Brittians. The fire ultimately spread to Johnson's house, causing damage to the house, its contents, and Johnson's cars.

Johnson claimed that the cause of the fire was a faulty speed control deactivation switch manufactured by Texas Instruments and installed by Ford when the car was assembled on August 5, 1992. Approximately one or two months before the car was assembled, Texas Instruments sold the speed control deactivation switch to Ford but shipped it to another company to be installed into another component part called a proportional valve. That company then shipped the proportional valve to Ford where it was installed in the Lincoln.

Approximately five months after the fire, in May 1999, Ford issued a recall because of problems with the switch. It appears that the defect in the switch was a "crack in the Kapton Seal which, over time, permits brake fluid to leak through the switch, resulting in a short."

In their motions for summary judgment, Ford and Texas Instruments argue that the statute of repose began to run as of the date the car was assembled, which would require the suit to be filed no later than August 5, 2002. Johnson claims the statute of repose did not begin to run until the Brittians bought the car on July 23, 1993, and therefore the statute of repose did not run until July 23, 2003.

The trial court found that the statute of repose did not begin to run until the car was sold to the Brittians and denied Ford and Texas Instruments' motions for summary judgment on Johnson's negligent manufacture and strict liability claims.

Johnson also sued Ford and Texas Instruments under a theory of "failure to warn." Under OCGA § 51-1-11 (c) failure to warn is excepted from the ten-year statute of repose. *Chrysler Corp. v. Batten*, 264 Ga. 723, 727 (450 SE2d 208) (1994). Ford and Texas Instruments argued that because Johnson suffered only property damage as a result of the fire, she could not sustain the failure to warn claim. The trial court agreed and granted summary judgment on that claim. Because Johnson's claim for punitive damages was premised on her failure to warn claim, the court granted summary judgment to defendants on that claim also.

### Case Nos. A06A0840 and A06A0841

In these two cases, Texas Instruments and Ford Motor Company respectively, cross-appeal from the trial court's denial of their motions for summary judgment on Johnson's claims of negligent manufacture and strict liability. Ford and Texas Instruments contend that these claims are barred by the statute of repose, OCGA § 51-1-11 (b) (2).

OCGA § 51-1-11 provides:

(a) Except as otherwise provided in this Code section, no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract and except as provided in Code Section 11-2-318.

(b) (1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

(2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

(3) A manufacturer may not exclude or limit the operation of this subsection.

(c) The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

The purpose of OCGA § 51-1-11 (b) (2) was

to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting. Hence, strict liability actions filed more than ten years after the "date of the first sale for use or consumption of" the product are completely barred. OCGA § 51-1-11 (b) (2).

(Citations omitted.) *Chrysler Corp.*, supra at 725.

In *Pafford v. Biomet*, 264 Ga. 540 (448 SE2d 347) (1994), the Supreme Court of Georgia first considered the statutory definition of the term "first sale for use or consumption" as employed in OCGA § 51-1-11 (b) (2). Id. at 541. *Pafford* involved a surgical procedure in which a metal plate was installed in plaintiff's back in an effort to stabilize his spine. Some months later, the plate broke and was removed from his back in a second operation. Id. at 540. The Court held that "by purchasing the plate for mere static retention in its inventory, the Hospital was not functioning as an active user or consumer thereof, but only as a dealer or any other person through whom the plate would ultimately be sold for its intended purpose of placement in the back of a patient." (Citations and punctuation omitted.) Id. at 542. The Court reasoned:

OCGA § 51-1-11 (b) (2) does not provide that the period of repose commences on the date of the "first sale" of a product by its manufacturer. It provides that the period of repose commences on the date of the "first sale for use or consumption." Accordingly, unless the plate had been sold to the Hospital for the Hospital's "use or consumption," the period of repose did not commence on the date that the plate was initially purchased by the Hospital.

Id. at 541.

In looking at case law from other states, the Court rejected any comparison, concluding that:

Other state statutes of repose begin their limitations period as of "the date of first sale, lease or delivery" of the product, (cit.), or "the date that the party last parted with possession or control of the product," (cit.), giving manufacturers control over when the limitations period begins. Our legislature, however, chose to begin the limitations period at the date of "(first sale) *for use (or consumption)*," not landmarks such as those chosen by (other) legislatures. (Emphasis in original.) *Chicopee, Inc. v. Sims Metal Works*, 391 SE2d 211, 215 (N.C. App. 1990).

*Pafford*, supra at 541-542.

The Court's holding reasoned:

The phrase "first sale for use or consumption" as employed in subsection (b) (2) of OCGA § 51-1-11 must be construed in pari materia with the concepts of "use" and "consumption" as employed in the other subsections of that statutory provision. It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. *Ryan v. Commrs. of Chatham County*, 203 Ga. 730, 731-732 (1) (48 SE2d 86) (1948). Accordingly, by purchasing the plate for mere static retention in its inventory, the Hospital was not functioning as an active "user or consumer" thereof, but only as "a dealer or any other person" through whom the plate would ultimately be sold for its intended purpose of placement in the back of a patient.*Wilson v. Studebaker-Worthington, Inc.*, 699 FSupp. 711, 718 (S.D.

Ind. 1987). See also *Border v. Indian Head Indus.*, 792 P2d 111, 112 (Ore. App. 1990); *Witherspoon v. Sides Constr. Co.*, 362 NW2d 35 (Neb. 1985); *Weeks v. Remington Arms Co.*, 733 F2d 1485, 1488, fn. 3 (11th Cir. 1984). The "first sale for use or consumption" did not occur until it was removed from the Hospital's inventory and sold to appellant for its actual intended purpose of placement in his back.

*Pafford*, supra at 542-543.

This case is factually different from *Pafford* in that the switch in question was not retained as part of Ford's inventory but was placed immediately into another component and then incorporated into the Lincoln on the assembly line. The question then becomes whether, under *Pafford*, the "actual intended purpose" of the switch was not realized until the car was sold to the consumer.

In *Dorsey Trailers, Inc. v. Knight*, A00A1985, A00A1986, A00A1987, Prod. Liab. Rep. (CCH) P15,995 (2001) (vacated and dismissed), this Court held that an aerial lift that was sold to a dealer and was then lent to customers for trial runs was "actively placed in use" when it was sold to the dealer. This Court reasoned:

> This result serves the purposes of both the statute creating liability for defective products and the statute of repose. It serves the former by extending protection to those individuals who may be "trying out" a new product before it is purchased, and it serves the latter by limiting the manufacturer's liability to a period of ten years following the time the product is first actively used. As such, the conclusion reached herein is necessary to preserve and balance the public policy involved in these situations.

Id.

Following this reasoning, when the car was driven off the assembly line, the starter had been actively placed in use, was in fact being used, and did not require purchase from the end user or consumer to be used for its "intended purpose." See *Pafford*, supra at 542. See also *Davis v. Brunswick Corp.*, 854 FSupp. 1574 (N.D. Ga. 1993), overruled on other grounds, *Lewis v. Brunswick Corp.*, 107 F3d 1494 (11th Cir. 1997). In *Davis*, Mercury Marine sold Galaxy Boat Manufacturing Company an engine and out-drive which Galaxy installed in the hull of its boat. Id. at 1577. The boat was involved in an accident that plaintiffs claimed was caused because there were no guards on the propellers. The court held that the sale of the engine and out-drive to Galaxy triggered the statute of repose because that was the date the

products were first placed in the stream of commerce, thus exposing Brunswick to liability. Id. at 1585.

Likewise, Ford and Texas Instruments argue that when Texas Instruments sold the switch to Ford for incorporation into the valve and subsequently into the car, Texas Instruments released control of the switch by placing it in the stream of commerce and this exposure to liability should trigger the statute of repose. See *Thorpe v. Robert F. Bullock, Inc.*, 179 Ga. App. 867, 872 (348 SE2d 55) (1986), aff'd, *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744 (353 SE2d 340) (1987) ("when a manufactured item designed to be sold as new merchandise is initially offered for sale or lease, or otherwise marketed or placed in the stream of commerce, the coverage of OCGA § 51-1-11 is invoked").

Although the court in *Pafford* declined to hold that the first sale of the plate triggered the running of the statute, the court based its holding on the fact that the plate was bought for mere static retention in inventory and therefore the hospital was not a user and consumer. Id. at 542. The plate could not be used for its intended purpose until the surgeon placed it in plaintiff's back to stabilize his spine.

In the instant case, there was no static retention in inventory and, as in *Pafford*, the switch was being used for its intended purpose when it was installed in the car and the car came off the assembly line at the plant.

Moreover, the situation envisioned by the court in *Pafford* in which a plaintiff's action is barred before it can reasonably be brought, id. at 543, does not exist in this case. The fire occurred in 1998, and the statute of repose did not run until August 2002.

Therefore, for the reasons discussed above, we conclude that the statute of repose began to run when Ford installed the switch in the car and the car became operable. Accordingly, the judgment of the trial court denying summary judgment to Ford and Texas Instruments on Johnson's claims of negligent manufacture and strict liability is reversed.

### Case No. A06A0839

In this case, Johnson appeals from the trial court's order granting summary judgment to Ford and Texas Instruments on her "failure to warn" claim. Johnson claims that Texas Instruments knew of the problem with the switches and failed to notify Ford in time to prevent the fire in the Brittians' Town Car.

The trial court held that, under Georgia law, the liability of a product supplier was limited to those cases which resulted in physical harm due to a failure to warn. The trial court cited *Fluidmaster, Inc. v. Severinsen*, 238 Ga. App. 755 (520 SE2d 253) (1999) (physical

precedent only), as authority for this holding. In *Fluidmaster*, a toilet in Severinsen's home overflowed due to a problem with the flush valve in the toilet tank. Severinsen sued the manufacturer of the flush valve and all claims were dismissed under the statute of repose except the "failure to warn" claim. The trial court held that under the Restatement of Torts, a product supplier is liable only for physical harm resulting from a failure to warn, and because Severinsen was seeking only property damages, Fluidmaster was entitled to summary judgment on this claim. Id. at 756.

*Fluidmaster* is not persuasive. It has no precedential value and the language relied on by the court is dicta. When this Court adopted Restatement of Torts, Vol. II, p. 1039, § 388 in *Moody v. Martin Motor Co.*, 76 Ga. App. 456, 459 (46 SE2d 197) (1948), it provided that:

> One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for *bodily harm* caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.

(Punctuation omitted; emphasis supplied.)

Section 388 of the Restatement (Second) of Torts (1965) provides in pertinent part:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for *physical harm* caused by the use of the chattel in the manner for which and by a person for whose use it is supplied. . . .

(Emphasis supplied.) Restatement (Second) of Torts, § 388 has been adopted as the law of Georgia; *Carter v. E. I. DuPont de Nemours & Co.*, 217 Ga. App. 139, 140 (456 SE2d 661) (1995), and is made applicable to manufacturers by Restatement (Second) of Torts, § 394. *Dingler v. Moran*, 224 Ga. App. 59, 60 (479 SE2d 469) (1996).

This includes the definitions and comments applicable to Section 388. As Johnson points out, the court in *Fluidmaster* ignored Section 7 of the Restatement (Second) of Torts which defines the term "physical harm" as "the physical impairment of the human body, or of land or chattels." Accordingly, the Restatement (Second) of Torts clearly provides that physical harm can be damage to property. Although we find no Georgia cases where this has been discussed, other states that have also adopted the Restatement (Second) of Torts have allowed claims for negligent failure to warn where there was only property damage and no bodily harm. See, e.g., *Midwest Specialties, Inc. v. Crown Indus. Products Co.*, 940 FSupp. 1160 (N.D. Ohio 1996) (claim for property damage and business interruption losses as a result of failure to warn); *Clarke Indus. v. Home Indem. Co.*, 591 S2d 458 (Ala. 1991) (asserting claims including negligent failure to warn after house damaged by fire); *Callas v. Trane CAC, Inc.*, 776 FSupp. 1117 (W.D. Va. 1990) (amended complaint clearly sets forth facts sufficient to support the claim that the defendants had a duty to warn about a defect which was unreasonably dangerous to property in light of definition of "physical harm" among others, as well as the comments applicable to § 388).

Therefore, we conclude that "bodily harm" is not required to maintain a claim for negligent failure to warn as set out in Section 388 of the Restatement (Second) of Torts. Further, as mentioned above, "[a] negligent failure to warn claim may arise from a manufacturer's post-sale knowledge acquired months, years, or even decades after the date of the first sale of the product." (Punctuation omitted.) *Hunter v. Werner Co.*, 258 Ga. App. 379, 383 (574 SE2d 426) (2002), citing *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994).

Because the trial court reached the erroneous conclusion that Johnson's failure to warn claim could not be sustained because there was no bodily injury in this case, it did not reach the merits of Texas Instruments' motion for summary judgment on this issue. Therefore, we vacate the court's grant of summary judgment to Ford and Texas Instruments on the "failure to warn" claim and remand to the trial court for further proceedings consistent with this opinion.

Johnson's claim for punitive damages was based solely on her claim of failure to warn. Her argument to the court below was that the conduct giving rise to her claim for punitive damages was "based upon [Texas Instruments'] deliberate failure to warn Ford of the problem with the brake pressure switch." For the reasons stated above, the trial court has not addressed the merits of this claim. Accordingly, the trial court's grant of summary judgment to Ford and Texas Instruments on Johnson's claim for punitive damages is vacated and remanded to the trial court for further action consistent

with this opinion. Therefore, the judgment of the court below is vacated in Case No. A06A0839 and the case is remanded to the trial court.

*Judgment vacated and case remanded in Case No. A06A0839. Judgments reversed in Case Nos. A06A0840 and A06A0841. Barnes and Ellington, JJ., concur.*

DECIDED JULY 7, 2006.

*Peter K. Kintz*, for Johnson.

*Holland & Knight, Alfred B. Adams III, Susan E. Edlein, Anita L. Schick*, for Texas Instruments, Inc.

*McKenna, Long & Aldridge, Michael R. Boorman, Charles K. Reed, Audrey R. Kohn, McLendon W. Garrett*, for Ford Motor Company.