[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10717

_____

D. C. Docket No. 01-01476-CV-WBH-1

THE PILLSBURY COMPANY, INC.,

Plaintiff-Appellant,

versus

WEST CARROLLTON PARCHMENT CO., INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 14, 2006)**

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

In this action, appellant, The Pillsbury Co. ("Pillsbury"), appeals the district

court's grant of the summary judgment motion of the appellee, West Carrollton

Parchment Co., Inc. ("West Carrollton"), on Pillsbury's claims of negligent manufacture, negligent failure to warn, and punitive damages. Pillsbury also appeals the district court's denial of its motion for a new trial and its motion for judgment as a matter of law on its breach of contract claim. After oral argument and a thorough review of the record, we reverse the judgments of the district court regarding the claims of negligent manufacture and negligent failure to warn, and affirm the judgments in all other respects.

## I. Background

Pillsbury began producing Pet-Ritz frozen pie crusts (or pie shells) in 1995, packaging them in stacks of two. To ease separation and prevent discoloration, a waxed paper divider ("divider") was inserted between the top face of one pie shell and the bottom of the baking tin containing the upper-most pie shell. The dividers were manufactured and supplied by outside suppliers who were required to represent that the products they supplied would conform to Pillsbury's specifications.

In 1998, Pillsbury launched a marketing campaign for its pie crusts by adding printed recipes to the dividers. Pillsbury's specifications for the printed dividers provided, *inter alia*, that (1) the wax be applied on top of the printing to serve as a functional barrier between the ink and the pie crusts; (2) there be no

2

visible transfer of ink to the pie crusts; (3) the supplier perform tests to ensure that no ink be visibly transferred to the pie crusts; (4) the ink(s) be approved for direct food contact; and (4) the specifications could not be verbally modified or superseded. To secure the dividers, Pillsbury enlisted the services of broker-distributor Federated Products ("Federated"), and Federated chose West Carrollton as a potential supplier.

At Federated's direction, West Carrollton forwarded Pillsbury several samples of its printing and waxing capabilities, and Pillsbury provided West Carrollton with its specifications for both plain and printed dividers. After receiving West Carrollton's samples, Pillsbury instructed Federated to secure printed dividers from West Carrollton.

Pillsbury issued a purchase order to Federated for 8.5 million printed dividers, and Federated issued its own purchase order to West Carrollton. Upon receiving a new product, West Carrollton's standard business practice was to transfer details from the product's specifications to its internal files and to its laboratory. West Carrollton also employed a Quality Assurance Manager to test products after production to determine if they complied with the specifications on file. West Carrollton alleges that after receiving the specifications for Pillsbury's printed dividers, it determined that the only way to keep its print register aligned

during the cutting process was to coat the dividers with wax *before* applying the ink printing. According to West Carrollton, before it began producing the dividers, it informed Pillsbury, through Federated, that because of printing and die-cutting limitations, the ink printing would be applied on top of the wax. Pillsbury, however, denies receiving this information.

Pillsbury accepted delivery of the printed dividers and began placing them between its pie crusts at the Lithonia, Georgia plant. Assembly workers would insert the dividers by hand, sometimes with the ink-side facing upwards and touching the bottom of the tin above (as West Carrollton claims it believed that they would be inserted), but sometimes with the ink-side facing downwards touching the pie crust below (which, as Pillsbury claims, its specifications clearly allowed). Notably, Pillsbury never performed more than a visual inspection of the dividers before accepting delivery or inserting them into its pie crusts.

In September 1998, workers at the Lithonia plant noticed that the ink from one of West Carrollton's printed dividers had transferred onto a pie crust. Further inspection revealed that the problem was widespread, and Pillsbury soon began receiving complaints from its customers. Pillsbury claims it was only at this point that it noticed that the ink printing had been applied *over* the wax and that West Carrollton had not used inks approved by the Food and Drug Administration

4

("FDA") for direct food contact.

At the FDA's direction, Pillsbury immediately began a complete recall of the entire production run of the Pet-Ritz pie crusts, totaling over 600,000 cases. The FDA deemed the pie crusts "adulterated" by a "food additive" (i.e., the ink), and therefore, "unsafe" under the applicable provisions of the Food, Drug, and Cosmetic Act ("FDCA"). The FDA classified the recall as a "Class III" recall, which, according to the FDA, is "for products that are unlikely to cause any adverse health reaction, but that violate FDA labeling or manufacturing regulations."[1] According to Pillsbury, it sustained damages exceeding $7.3 million as a result of this recall.

Pillsbury filed a complaint against West Carrollton in the Superior Court of DeKalb County, Georgia for negligent manufacture, negligent failure to warn, punitive damages, and breach of contract. West Carrollton removed the case to the United States District Court for the Northern District of Georgia on the basis of federal diversity jurisdiction. Pillsbury later filed an amended complaint expounding upon its breach of contract claims, asserting that West Carrollton breached its contract with Pillsbury and its contract with Federated (to which Pillsbury was a third party beneficiary). The parties filed cross-motions for

---

[1] FDA Recall Policies, http://www.cfsan.fda.gov/~lrd/recall2.html (last visited Dec. 6, 2006).

summary judgment. The district court denied Pillsbury's motion and granted West Carrollton's motion as to Pillsbury's claims of negligence, punitive damages, and direct breach of contract. The remaining breach of contract claim (under the third-party-beneficiary theory) was tried by jury, and, after approximately sixty minutes of deliberation, the jury found in favor of West Carrollton. Pillsbury then filed motions for judgment as a matter of law and a new trial, which the district court denied. Pillsbury timely filed this appeal.

## II. Standard of Review

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1230 (11th Cir. 2006). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We review the district court's denial of a motion for a new trial for abuse of discretion. Bianchi v. Roadway Express, Inc., 441 F.3d 1278, 1282 (11th Cir. 2006). We review de novo the denial of a motion for judgment as a matter of law, applying the same standard as the district court, and we will reverse "only if the

facts and inferences point overwhelmingly in favor of the movant, such that reasonable people could not arrive at a contrary verdict." Ledbetter v. Goodyear Tire and Rubber Co., Inc., 421 F.3d 1169, 1177 (11th Cir. 2005) (citations and internal punctuation omitted).

### III. Analysis

#### A. Negligent Manufacture

On appeal, Pillsbury argues that the district court erred in granting summary judgment in favor of West Carrollton on the negligent manufacture claim. In cases involving an allegedly defective product manufactured or supplied pursuant to a contractual relationship, under Georgia law,[2] "[t]he economic loss rule prevents recovery in tort when [the] defective product has resulted in the loss of value or use of the thing sold, or the cost of repairing it." Flintkote Co. v. Dravo Corp., 678 F.2d 942, 948 (11th Cir. 1982). "Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain." Id.; see also Vulcan Materials Co. v. Driltech, Inc., 251 Ga. 383, 387, 306 S.E.2d 253, 257 (1983). But the economic loss rule does not prevent a tort action to recover for injury to *other property* and persons because the duty breached generally arises independently of the contract. Flintkote, 678 F.2d at

---

[2] The parties have stipulated that Georgia's substantive law applies.

7

948; <u>Vulcan Materials</u>, 251 Ga. at 387, 306 S.E.2d at 257.  Hence, the economic loss rule aids in determining if the plaintiff seeks to recover for injuries resulting from the breach of the duty "to produce a nonhazardous product that does not pose an unreasonable risk of injury to person or property"—a duty "arising independently of the contract."  <u>Flintkote</u>, 678 F.2d at 948.

In addition to the duty "to produce a nonhazardous product that does not pose an unreasonable risk of injury to person or property," <u>id.</u>, Georgia law recognizes that extra-contractual duties may arise expressly from statute or common law, or may be implied by law from special contractual relationships. <u>Bulmer v. S. Bell Tel. & Tel. Co.</u>, 170 Ga. App. 659, 660, 317 S.E.2d 893, 895 (1984) (citations omitted).  For example, Georgia law implies a "public duty," independently of contract, in certain contractual relations between principal and agent, bailor and bailee, attorney and client, physician and patient, common carrier and passenger or shipper, and master and servant.  <u>Id.</u>

Pillsbury argues that the economic loss rule does not bar recovery on its negligent manufacture claim because extra-contractual duties did exist between it and West Carrollton based upon, *inter alia*, the general duty of care, a public duty owed by West Carrollton to the public in general, and the duty West Carrollton adopted for itself when it created its own internal policies to follow all

8

specifications supplied by its customers.  Pillsbury also argues that the district court misconstrued the economic loss rule to bar recovery unless there has been physical injury to *persons* (as opposed to property).  Pillsbury further argues that the court erroneously found the printed dividers to be nonhazardous and nondefective because they posed no unreasonable risk of physical harm to *persons*. Finally, Pillsbury contends that genuine issues of material fact existed on all elements of its prima facie case for negligent manufacture.

In its summary judgment order, the district court cited this court's <u>Flintkote</u> opinion in holding that although suppliers have an extra-contractual duty to manufacture products that do not pose an unreasonable risk of injury to "the people who use the products," Pillsbury had not shown that West Carrollton's failure to manufacture the dividers in accordance with Pillsbury's specifications established that the dividers were "defective" or posed an unreasonable risk of injury "to Pillsbury or its customers."  According to the district court, absent such a showing, Pillsbury could only proceed on a breach of contract theory.

The district court apparently construed the extra-contractual duty discussed in <u>Flintkote</u> as arising only if a product creates an unreasonable risk of injury to *persons*.  But this is a misapprehension of <u>Flintkote</u>, in which this court held that under Georgia law, there is an extra-contractual duty "to produce a nonhazardous

9

product that does not pose an unreasonable risk of injury to person *or property*."

Flintkote, 678 F.2d at 948 (emphasis added).  The risk of injury to *persons* is *not*

the lynchpin of the extra-contractual duty discussed in Flintkote.  See id.  Thus, in

determining whether a material issue of fact existed regarding the duty element in

Pillsbury's negligent manufacture claim, the district court erred in failing to

consider evidence that West Carrollton's dividers posed an unreasonable risk of

injury to Pillsbury's pie crusts.  And because Pillsbury presented enough evidence

to create a genuine issue of fact regarding the breach, causation, and damages

elements of its negligent manufacture claim, we conclude that the district court's

grant of summary judgment to West Carrollton on this claim was improper.[3]

B.  Negligent Failure to Warn

Pillsbury also challenges the district court's grant of summary judgment in

favor of West Carrollton on the negligent failure to warn claim.  Under Georgia

law, "the manufacturer of a product which, to its actual or constructive knowledge,

involves a danger to users, has a duty to give warning of such danger."  Chrysler

---

[3] As for the other extra-contractual duties Pillsbury alleges were breached by West Carrollton, we agree with the district court that there is no basis under Georgia law to support the existence of such duties on the facts of this case.  Under Georgia law, public duties generally exist only as to public officers, common carriers, innkeepers, public warehousemen, and public utilities.  See, e.g., Bulmer v. S. Bell Tel. & Tel. Co., 170 Ga. App. 659, 660, 317 S.E.2d 893, 895 (1984); Walton Elec. Membership Corp. v. Snyder, 270 Ga. 62, 63, 508 S.E.2d 167, 169 (1998).  And we find nothing in Georgia law to support Pillsbury's contention that an extra-contractual duty arises by virtue of a company adopting an internal policy to follow the specifications supplied by its customers.

Corp. v. Batten, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994) (citations omitted). The existence of a duty to warn "depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger." Wabash Metal Prods., Inc. v. AT Plastics Corp., 258 Ga. App. 884, 886-87, 575 S.E.2d 683, 685 (2002) (citations omitted). The duty to warn "arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." Batten, 264 Ga. at 724, 450 S.E.2d at 211. "Such matters generally are not susceptible to summary adjudication and should be resolved by a trial in the ordinary manner." Wabash, 258 Ga. App. at 887, 575 S.E.2d at 685 (citations omitted). And as for the type of harm or danger required to give rise to a duty to warn, the Georgia Court of Appeals recently has held that "'bodily harm' is not required to maintain a claim for negligent failure to warn." Johnson v. Ford Motor Co., 281 Ga. App. 166, — S.E.2d —, —, Nos. A06A0839-A06A0841, 2006 WL 1867920, at *6 (Ga. Ct. App. July 7, 2006).

But "Georgia law imposes no duty on a manufacturer to warn of a danger associated with the use of its product if that danger is open or obvious." Sheckells v. AGV-USA Corp., 987 F.2d 1532, 1534 (11th Cir. 1993) (citations omitted). And there is no duty to warn "where it appears that the person using the product should know of the danger, or should in using the product discover the danger."

11

Moore v. ECI Mgmt., 246 Ga. App. 601, 606, 542 S.E.2d 115, 121 (2000).

Where a duty to warn arises, it "may be breached by (1) failing to adequately communicate the warning to the ultimate user or (2) failing to provide an adequate warning of the product's potential risks." Wilson Foods Corp. v. Turner, 218 Ga. App. 74, 75, 460 S.E.2d 532, 534 (1995) (citations omitted). And whether "such suits are grounded on either a strict liability or negligence theory, proximate cause is a necessary element of the plaintiff's case." Id.

Here, Pillsbury argues that the district court erred in granting summary judgment to West Carrollton on the negligent failure to warn claim because, *inter alia*, the court impermissibly narrowed West Carrollton's duty to warn to only those instances in which its dividers posed *health risks* to Pillsbury's customers. We agree.

In its summary judgment order, the district court held that there was "no indication in the record that West Carrollton's dividers posed any health risk to Pillsbury's customers," and that absent such a showing, Pillsbury failed to establish that West Carrollton had a duty to warn. But throughout the Restatement (Second) of Torts,"physical harm" is defined as "the physical impairment of the human body, or of land *or chattels*." Restatement (Second) of Torts § 388 (emphasis added). Georgia's tort law, including its failure to warn action, incorporates the

12

Restatement. See, e.g., BDO Seidman, LLP v. Mindis Acquisition Corp., 276 Ga. 311, 311, 578 S.E.2d 400, 401 (2003) (negligent misrepresentation); Polston v. Boomershine Pontiac-GMC Truck, Inc., 262 Ga. 616, 617-18,423 S.E.2d 659, 661 (1992) (joint tortfeasor liability); Greenway v. Peabody Int'l Corp., 163 Ga. App. 698, 702-704, 294 S.E.2d 541, 545-47 (1982) (discussing negligent failure to warn and stating that "[t]he rules set forth in the Restatement and Am.Jur. have become incorporated into Georgia case law"). And although the Georgia Supreme Court has yet to decide this issue, as discussed above, the Georgia Court of Appeals recently held that "'bodily harm' is not required to maintain a claim for negligent failure to warn." Johnson, 281 Ga. App. at —, — S.E.2d at —, 2006 WL 1867920, at *6. Accordingly, we conclude that the district court erred in narrowing the duty to warn to only those instances where a product poses health risks to persons.

Because the district court erroneously failed to consider whether the risk of injury to *property* gives rise to a duty to warn, the court failed to assess whether Pillsbury presented sufficient evidence to create a genuine issue of fact as to (1) whether the dividers, or a particular use of the dividers, posed a foreseeable risk of injury to Pillsbury's pie crusts, (2) whether Pillsbury reasonably should have anticipated or discovered the danger, (3) whether West Carrollton failed to exercise reasonable care to inform Pillsbury of the risk, and (4) whether West Carrollton's

13

failure to warn Pillsbury was the proximate cause of the damage to Pillsbury's pie crusts. See Sheckells, 987 F.2d at 1534. Thus, we hold that the district court erred in granting summary judgment to West Carrollton on the failure to warn claim.

## C. Punitive Damages

Pillsbury contends that because the district court erred in entering summary judgment against it on the negligent manufacture and failure to warn claims, the district court likewise erred in entering summary judgement against it on its claim for punitive damages. "Punitive damages are not applicable to a claim for breach of contract." Harris v. Distinctive Builders, 249 Ga. App. 686, 690, 549 S.E.2d 496, 500 (2001) (citations omitted). But punitive damages may be awarded in *tort* actions "in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga. Code Ann. § 51-12-5.1 (West 2006). Negligence, even gross negligence, is not enough to support a punitive damage award. MDC Blackshear, LLC v. Littell, 273 Ga. 169, 173, 537 S.E.2d 356, 361 (2000).

Here, the district court held that because it had granted summary judgment to West Carrollton on Pillsbury's tort claims, Pillsbury's claim for punitive

14

damages necessarily failed because punitive damages were not applicable to Pillsbury's remaining breach of contract claims. Although we conclude that the district court erred in granting summary judgment to West Carrollton on Pillsbury's tort claims, we nonetheless conclude that, based on the record, Pillsbury cannot show by clear and convincing evidence that West Carrollton's actions evinced willfulness and wantonness sufficient to raise the presumption of conscious indifference to consequences. Thus, we hold that, as a matter of law, Pillsbury is not entitled to punitive damages, and we affirm the district court's dismissal of this claim.

D. New Trial Motion Based on the Display of Inadmissible Evidence

Pursuant to a pretrial motion in limine, West Carrollton's counsel agreed not to present any evidence that Pillsbury had received a monetary settlement from its insurance carrier covering all of its losses, minus the original cost of the dividers. While cross examining Pillsbury official Cara Hartl, West Carrollton's counsel published an unredacted version of a letter from Hartl to Federated's Dale Anderson on a projector screen. The unredacted version of the letter contained a passage stating that Pillsbury had recovered all but the original cost of the dividers in a settlement with its liability-insurance carrier. Based on the trial transcript, it appears that as soon as the unredacted letter was displayed on the projector,

Pillsbury's counsel demanded that the exhibit be removed from the screen, and West Carrollton's counsel immediately complied. After West Carrollton moved to enter the exhibit into evidence, Pillsbury responded that it had no objection to admitting the "redacted version."

Following the trial, Pillsbury filed a motion for a new trial based, in part, on the ground that the unredacted letter presented evidence that Pillsbury had received collateral payments from its insurance carrier to cover most of its losses from the recall—evidence Pillsbury claims was extremely prejudicial and devoid of probative value under Federal Rule of Evidence 403. The district court, in a brief order, denied Pillsbury's motion.

Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by, *inter alia*, "the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Federal Rule of Civil Procedure 61 provides that a jury's hearing of inadmissible evidence is not grounds for granting a new trial "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61. Thus, when a party seeks a new trial on the grounds that the jury was influenced by inadmissible evidence, the trial judge must grant a new trial unless the error did not affect any substantial rights. Ad-Vantage Tel. Directory

Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1465 (11th Cir. 1994).

"[I]f one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." Id. (citations and internal quotations omitted). Factors to analyze in determining if a party's substantial rights were affected include: (1) the number of errors, (2) the closeness of the factual disputes, (3) the prejudicial effect of the evidence, (4) the instructions given, and (5) whether counsel intentionally elicited the evidence and focused on it during the trial. Id.

On appeal, Pillsbury contends that the district court should have awarded a new trial because: the case centered on a fact-intensive inquiry thereby presenting a close factual dispute; evidence of the insurance settlement was extremely prejudicial and without probative value; and West Carrollton's counsel had complete control over the offending exhibit and was "at least careless and reckless" in publishing it. In our view, however, publication of the offending exhibit did not warrant a new trial.

First, based on the record, it is clear that the one-time display of the unredacted exhibit was so brief that it is doubtful the jury had time to even read the offending sentences, which were buried amidst several other lines of text. And Pillsbury presented no evidence that the offending sentences influenced the jury's

17

deliberation. Moreover, as soon as Pillsbury's counsel demanded that the exhibit be removed, West Carrollton's counsel complied. There was no evidence that West Carrollton intentionally elicited or focused on the offending evidence during the trial. See Ad-Vantage, 37 F.3d at 1465. Thus, we conclude that the district court did not abuse its discretion in denying Pillsbury's motion for a new trial on this ground.

E. New Trial Motion Based on the Ground that Pillsbury's Specifications Were Part of the Federated-West Carrollton Contract as a Matter of Law

Pillsbury also challenges the district court's denial of its motion for a new trial on the ground that the district court should have held as a matter of law that Pillsbury's printed-divider specifications were part of the Federated-West Carrollton. We disagree. West Carrollton presented enough evidence at trial to create a genuine factual dispute as to whether Pillsbury's printed-divider specifications were indeed part of the Federated-West Carrollton contract. The purchase order did not reference the printed-divider specifications, and West Carrollton's President, Charles Huber, testified that these specifications were never intended to be a part of the pertinent contract. Moreover, genuine issues of fact remained as to whether Pillsbury's claimed losses were caused by West Carrollton's alleged breach of this contract or whether the losses resulted because Pillsbury improperly inserted the dividers with the ink-side facing downwards.

18

Thus, we conclude that the jury's verdict in favor of West Carrollton on Pillsbury's breach of contract claim was not a "miscarriage of justice." See Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (holding that the district court should grant a motion for a new trial "when the verdict is against the clear weight of the evidence *or* will result in a miscarriage of justice" (emphasis added)). Accordingly, we hold that the district court did not abuse its discretion in denying Pillsbury's new trial motion on this ground.

F. Judgment as a Matter of Law

Pillsbury finally argues that because the district court should have held that its printed-divider specifications were part of the Federated-West Carrollton contract as a matter of law, the district court should therefore have granted its post-trial motion for judgment as a matter of law on the breach of contract claim. According to Pillsbury, there were no genuine issues of material fact as to whether West Carrollton breached this contract or whether Pillsbury was entitled to damages as a result. We disagree.

Federal Rule of Civil Procedure 50(a) provides that if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on a particular issue, the trial court may grant judgment as a matter of law to the opposing party on that issue. Fed R. Civ. P. 50(a). But as discussed above, the evidence presented

19

at trial was sufficient to create a genuine issue of fact as to whether Pillsbury's printed-divider specifications were part of the Federated-West Carrollton contract, and it was sufficient to allow a reasonable jury to find in favor of West Carrollton on this issue. Therefore, we hold that the district court did not err in denying Pillsbury's motion for judgment as a matter of law on its breach of contract claim.

## IV. Conclusion

For the reasons above, we REVERSE the district court's grant of summary judgment to West Carrollton on Pillsbury's negligent manufacture and negligent failure to warn claims, and REMAND for further proceedings consistent with this opinion. As to the remaining claims raised in this appeal, we AFFIRM the district court.