[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2008
THOMAS K. KAHN
CLERK

No. 07-14388
_____

D. C. Docket No. 01-01476-CV-WBH-1

THE PILLSBURY COMPANY, INC.,

Plaintiff-Appellant,

versus

WEST CARROLLTON PARCHMENT COMPANY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 29, 2008)**

Before CARNES and MARCUS, Circuit Judges, and DuBOSE,* District Judge.

_____

*Honorable Kristi K. DuBose, United States District Judge for the Southern District of
Alabama, sitting by designation.

PER CURIAM:

## I. OVERVIEW

Pillsbury Company, Inc. ("Pillsbury") challenges the district court's order granting summary judgment for West Carrollton Parchment Company, Inc. (West Carrollton) on Pillsbury's claims that West Carrollton negligently manufactured pie crust dividers and then negligently failed to warn Pillsbury of the danger the pie crust dividers posed to Pillsbury's pie crust. Because there are genuine issues of material fact in dispute, the district court's summary judgment order is REVERSED.

## II. BACKGROUND[1]

Pillsbury manufactured frozen pie crusts which were sold in stacks of two with a wax paper divider between the shells. The production of the dividers was outsourced. In 1998 Pillsbury decided to print recipes on the dividers. Federated Products acted as the broker for Pillsbury in locating an entity to produce the recipe-embellished dividers. Pillsbury's specifications (hereinafter original specifications) for the printed dividers provided that (1) the wax would be applied

---

[1] The factual background of this case has been thoroughly set out in our previous opinion Pillsbury Co. v. West Carrollton Parchment Co. , 210 Fed. Appx. 915 (11th Cir. 2006) ("Pillsbury I").

2

on top of the printing to serve as a functional barrier between the ink and the pie crusts; (2) there would be no visible transfer of ink to the pie crusts; (3) the supplier performs tests to ensure that no ink is visibly transferred to the pie crusts; (4) the ink is FDA approved for direct food contact; and (5) the specifications could not be verbally modified or superseded.

West Carrollton was chosen by Federated as a prospective supplier. After reviewing West Carrollton's samples of its printed dividers, Pillsbury through Federated agreed to purchase West Carrollton's dividers. West Carrollton produced dividers for Pillsbury which used ink that was approved only for indirect food contact and had the recipes printed on top of the applied wax. After receiving the dividers, Pillsbury's assembly workers inserted by hand the dividers between the stacked pie crusts. Some dividers were inserted with the printed side of the divider touching the pie crust. This method of insertion resulted in ink being transferred to the pie crusts. Neither the U.S. Food and Drug Administration nor Pillsbury's customers were pleased with this result and ultimately the FDA persuaded Pillsbury to recall more than 600,000 cases of pie crusts.

Subsequently, Pillsbury filed this lawsuit claiming that West Carrollton breached the contract by failing to comply with the specifications provided by Pillsbury, negligently manufactured the dividers and negligently failed to warn

3

Pillsbury of the danger the dividers posed.   This is the second appeal to this court.

Initially the district court granted West Carrollton's motion for summary judgment on Pillsbury's claims alleging negligent manufacturing and negligent failure to warn, finding insufficient evidence of an unreasonable risk of injury to persons.  The breach of contract claim was tried before a jury which returned a verdict in favor of West Carrollton.[2]  Pillsbury appealed both the motion for summary judgment and the jury verdict.

On appeal we reversed and remanded as to the claims of negligent manufacturing and negligent failure to warn.  We held that under Georgia law the duty to produce a nonhazardous product protects against harm to property as well as harm to persons and that "the district court erred in failing to consider evidence that West Carrollton's dividers posed an unreasonable risk of injury to Pillsbury's pie crusts."  Pillsbury I, 210 Fed. Appx. 915, 919 (11th Cir. 2006).  We affirmed the district judge's opinion in all other respects and upheld the jury verdict on the contract claim.

On remand the district judge accepted supplemental briefs from the parties and again granted summary judgment in favor of West Carrollton on the remaining

---

[2]Pillsbury's claim was as a third-party beneficiary to the contract between Federated and West Carrollton.

4

claims of negligent manufacture and negligent failure to warn. This appeal followed.

## III. STANDARD OF REVIEW

The standard of review on the order granting the motion for summary judgment is de novo, viewing the evidence and all factual inferences in the light most favorable to the party opposing the motion. Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir.2008). "A district court may not grant a motion for a judgment as a matter of law unless 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' " Pozzi Window Co. v. Auto-Owners Ins., 446 F.3d 1178, 1189 n.4 (11th Cir. 2006) (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) (quotation marks and citations omitted)).

## IV. DISCUSSION

In its second consideration of summary judgment on the negligent manufacturing and negligent failure to warn claims, the district court considered the testimony that was presented at the trial on the breach of contract claim. Specifically, the district court determined that based on the "implicit findings and

credibility determinations made by the jury regarding the breach of contract claim" no reasonable jury could conclude that West Carrollton negligently manufactured the dividers or failed to warn of the danger the dividers posed to the pie crusts. The district court stated that the credibility determinations were undoubtedly resolved in favor of the defendant - - that is, the district court speculated that the jury credited Mr. Huber's (West Carrollton's President) entire testimony over the testimony of Mr. Anderson (Federated's President). Thus, because the district court interpreted Mr. Huber's testimony as contradictory to a finding of negligent manufacturing of the dividers and negligent failure to warn of dangers to the pie crusts, the court determined that West Carrollton must prevail on summary judgment.

Pillsbury argues, *inter alia*, that because the jury could have reached its verdict for various reasons, it was error for the district court to infer a credibility determination which dictates summary judgment for West Carrollton. We agree.

At trial Mr. Huber testified that Pillsbury's original specifications (i.e., wax to be applied on top of ink, ink to be approved for direct food contact and no visible transfer of ink to crusts) were not part of the contract/purchase order between Federated and West Carrollton. Moreover, Mr. Huber testified that he discussed with Mr. Anderson that the ink printing would be on top of the wax, that

6

the ink to be used was approved only for indirect food contact and that the dividers would be placed print side up so as not to have contact with the crusts. Mr. Huber also testified that he sent to Pillsbury sample dividers with various types of printing, after which Mr. Anderson told West Carrollton that Pillsbury had selected the Oregon Farms sample. The dividers produced by West Carrollton were identical to the selected sample.

In direct contradiction to Mr. Huber's testimony, Mr. Anderson stated that the original specifications were part of the contract and were not modified or waived. Moreover, Mr. Anderson testified that Mr. Huber never informed Federated that the dividers to be produced would not meet Pillsbury's original specifications. Mr. Anderson also stated that the samples sent to Pillsbury were merely for the purpose of reviewing print quality and the selection by Pillsbury of certain print was not meant to alter the original specifications.

At the close of the evidence, the district court instructed the jury that there were at least two paths to a defendant's verdict: (1) The defendant prevails if plaintiff failed to prove that the original specifications, which plaintiff alleged were breached, were part of the contract, or (2) the defendant prevails if the original specifications were part of the contract but defendant proved the specifications were orally waived or modified and plaintiff failed to prove the

7

modified specifications were breached. The jury returned a verdict in favor of the defendant finding that the plaintiff had failed to prove that the contract was breached. The verdict contains no explanation of this finding.[3]

While all roads lead to Rome, the paths to that destination are varied and distinct. The same is true for the defense verdict in this case; the verdict could have resulted from several variations in reasoning. For instance, the jury, in finding no breach of contract, could have relied only on Mr. Huber's testimony that the original specifications were not part of the contract, in which case the jury may have never evaluated Mr. Huber's remaining testimony regarding whether Pillsbury/ Federated were informed and approved of changes to the original specifications.[4] In other words, the jury would not have needed to consider the issue of whether Pillsbury/Federated approved changes to the original specifications if they found that the original specifications were not part of the contract.

---

[3] The verdict form merely indicates that the jury did not find by a preponderance of the evidence that defendant West Carrollton breached the contract with Federated for the production of printed wax paper dividers.

[4] It is this remaining testimony that the district court relies upon to support its conclusion that Huber's testimony thwarts a basis of liability on the negligence claims. Presumably it is Huber's testimony that Federated acquiesced in the type of ink to be used as well as how the dividers would be placed to avoid contact with the pie shell that would negate the negligent failure to warn and negligent manufacturing claims.

In sum, there has been no specific jury determination that would even arguably absolve West Carrollton of liability for negligent manufacturing or negligent failure to warn. There is simply no way to know which path was taken to determine that West Carrollton was not liable for breach of contract. We understand the district court's effort to conserve judicial resources and to avoid unnecessary duplication of litigation, however, in this instance, the jury's general verdict that the contract was not breached cannot also support summary judgment on the remaining negligence claims.

## V. CONCLUSION

Because there are genuine issues of material fact to be resolved on the negligence claims, we REVERSE the district court's order granting summary judgment and REMAND for proceedings not inconsistent with this opinion.