S10Q1379. CAMPBELL et al. v. ALTEC INDUSTRIES, INC. et al.

(707 SE2d 48)

HINES, Justice.

This case comes before this Court on a certified question from the United States Court of Appeals for the Eleventh Circuit in litigation regarding the potential liability of a manufacturer of personal property.

The Eleventh Circuit certified to this Court the question:

> In a strict liability or negligence action, does the statute of repose in OCGA § 51-1-11 begin running when (1) a component part causing an injury is assembled or tested, (2) a finished product, which includes an injuring component part, is assembled, or (3) a finished product, which includes an injuring component part, is delivered to its initial purchaser?

The answer is that the statute of repose found in OCGA § 51-1-11 (b) (2)[1] begins to run when a finished product is sold as new to the intended consumer who is to receive the product, in this case, Georgia Power Company.

---

[1] OCGA § 51-1-11 reads:

(a) Except as otherwise provided in this Code section, no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract and except as provided in Code Section 11-2-318.

(b) (1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

(2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

(3) A manufacturer may not exclude or limit the operation of this subsection.

(c) The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

(d) Irrespective of privity, a manufacturer shall not be held liable for the manufacture of a product alleged to be defective based on theories of market share or enterprise, or other theories of industry-wide liability.

As presented by the Eleventh Circuit, and revealed in the record, the relevant facts of this case are that Ronald J. Campbell, Jr., a Georgia Power employee, was injured while operating an A77-T bucket truck on June 30, 2006, when the lower boom lift cylinder failed, causing both the upper and lower booms to drop, sending the bucket to the ground, and injuring Campbell. Altec Industries, Inc. manufactured and sold the bucket truck to Georgia Power; Texas Hydraulics, Inc. ("THI") manufactured the component lower boom lift cylinder, which was developed jointly by Altec and THI for use on such trucks Georgia Power ordered. On February 4, 2008, Campbell and his wife, Kristie Campbell (collectively "Campbell"), brought this action against Altec and THI, based in part on product liability under OCGA § 51-1-11 (b) (1). Altec and THI moved for summary judgment as to that claim, which the district court granted, finding that the statute of repose in OCGA § 51-1-11 (b) (2) began to run on January 14, 1998, when Altec placed the cylinder on a test chassis and operated it, and thus barred the Campbells' suit filed more than ten years later.[2] On appeal to the Eleventh Circuit, that Court certified the above question to this Court.

Subsection (b) (1) of OCGA § 51-1-11 imposes liability on a manufacturer "of any personal property sold as new property directly or through a dealer or any other person" when a natural person is injured because the manufacturer's product "when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." Id. Subsection (b) (2) of that Code section establishes a period of ultimate repose within which such a right of action must accrue; beyond the period set forth in a statute of repose, the cause of action simply does not exist. See *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005). OCGA § 51-1-11 (b) (2) defines the period of ultimate repose for any action brought under subsection (b) (1) by requiring that any such action pursued must be commenced within "ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury."

In crafting OCGA § 51-1-11 (b), the General Assembly did not choose to begin the period of repose "on the date of the 'first sale' of a product by its manufacturer. [Rather, OCGA § 51-1-11 (b) (2)] provides that the period of repose commences on the date of the 'first

---

(e) Irrespective of privity, a manufacturer of a product alleged to be defective shall not be held liable for a public nuisance based on theories of market share or enterprise, or other theories of industry-wide liability.

[2] The completed truck was delivered to Georgia Power on or after April 13, 1998, less than ten years before the February 4, 2008, filing of the suit.

sale *for use or consumption.*' " *Pafford v. Biomet*, 264 Ga. 540, 541 (1) (448 SE2d 347) (1994) (*Pafford II*). (Emphasis supplied.) The General Assembly could have chosen to begin the period of repose on the date that the product was last in the hands of the manufacturer, id. at 541-542, but it did not. The choice of "the date of the first sale for use or consumption" to trigger the running of the statute of repose is in keeping with OCGA § 51-1-11 (b) (1)'s imposition of liability on a manufacturer who sells its product "directly or through a dealer or any other person" as new; regardless of any chain of middlemen, the end sale of the product as new is what brings the manufacturer within the ambit of OCGA § 51-1-11 (b) (1), if the other conditions for imposing liability exist. See *Pafford II*, supra at 543. While the General Assembly used the term "when sold by the manufacturer" in defining the conditions for liability under subsection (b) (1), it made a different choice when establishing the date by which the statute of repose under subsection (b) (2) is calculated. Id. at 541-543. When designating the parameters by which that date is calculated, the General Assembly did not choose to reference a sale by the manufacturer, but rather a sale to the end user. OCGA § 51-1-11 (b) (2).

In posing its certified question to this Court, the Eleventh Circuit cited a potential conflict between this Court's decision in *Pafford II*, supra, and that of the Court of Appeals in *Johnson v. Ford Motor Co.*, 281 Ga. App. 166 (637 SE2d 202) (2006). We take this opportunity to hold that *Johnson* was wrongly decided and must be overruled, and that the reasoning of *Pafford II* controls the question certified to this Court.

*Pafford II* dealt with an allegedly defective metal plate that was surgically installed in the plaintiff's body in 1988; in 1990, he filed suit asserting a claim under OCGA § 51-1-11 (b). Although it was uncertain when the plate had been sold to the hospital, the evidence showed such a date to be sometime between 1972 and 1980. The Court of Appeals affirmed the trial court's grant of summary judgment to the defendant manufacturers on the theory that there could be no showing that the 1990 suit was within ten years of the "first sale for use or consumption" of the plate. *Pafford v. Biomet*, 210 Ga. App. 486, 487 (2) (436 SE2d 504) (1993) (*Pafford I*). This Court reversed that portion of *Pafford I*, and stated:

> Subsection (b) (1) of [OCGA § 51-1-11] recognizes a distinction between the individual who initially purchased a manufactured product for mere static retention in his inventory and that individual whose actual employment of the product was ultimately intended and, as that distinction is expressed therein, the first "use or consumption" of the

product would be by the latter, rather than the former, individual:

> The manufacturer of any personal property sold as new property directly or *through a dealer or any other person* shall be liable in tort, irrespective of privity, to any natural person who may *use, consume*, or reasonably be affected by the property. . . .

*Pafford II*, supra at 542 (1).

Relying on this quoted language, Altec and THI assert that *Pafford II* offers no controlling principle here because there was no purchase of the cylinder "for mere static retention in [an] inventory . . . ." Id. However, Altec and THI focus upon the wrong portion of the quoted language, as the proper focus should concentrate on "that individual whose actual employment of the product was ultimately intended . . . ." Id. It is that individual who is the intended beneficiary of the liability imposed through OCGA § 51-1-11 (b) (1). *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745-746 (353 SE2d 340) (1987) ("[T]he doctrine of strict liability puts a burden on the manufacturer who markets a new product to take responsibility for injury to members of the consuming public for whose use and/or consumption the product is made."). And, it is the last sale of the property as new that is most closely associated with that individual's use, and it is that sale which triggers the commencement of the statute of repose found in OCGA § 51-1-11 (b) (2). Accordingly, as Georgia Power was the intended consumer of the assembled bucket truck, and its component parts, suit must have been filed against any manufacturer under OCGA § 51-1-11 (b) within ten years of the date of the sale of the finished product to Georgia Power.

*Johnson*, supra, incorrectly reached a different result. That case dealt with an automobile that was manufactured on August 5, 1992, and sold to the Brittains on July 23, 1993; in 1998, the car caught fire, allegedly due to a faulty speed deactivation switch, and damaged Johnson's adjacent house. Johnson sued the manufacturers of both the car and the component speed deactivation switch. Upon motion for summary judgment, the trial court held that the statute of repose set forth in OCGA § 51-1-11 (b) (2) did not begin to run until the July 23, 1993 sale to the Brittains; the Court of Appeals reversed, and held that "the statute of repose began to run when Ford installed the switch in the car and the car became operable," id. at 171, which was August 5, 1992.[3]

---

[3] The opinion of Court of Appeals does not state when suit was filed.

*Johnson* states that in reaching its conclusion, it relied upon the reasoning of *"Dorsey Trailers, Inc. v. Knight,* A00A1985, A00A1986, A00A1987, Prod. Liab. Rep. (CCH) P15,995 (2001) (vacated and dismissed) . . . ." No reported opinion of the *Dorsey Trailers* case exists, but *Johnson* sets forth language from that vacated opinion as though there was a reported opinion, see Court of Appeals Rule 33 (b), to the effect that a product "that was sold to a dealer and was then lent to customers for trial runs was 'actively placed in use' when it was sold to the dealer." *Johnson,* supra at 170. This Court has recognized that the term "sale" under OCGA § 51-1-11 (b) (1) may encompass a marketing "try out" in the hands of the consumer, even if no formal sale has occurred. *Robert F. Bullock, Inc.,* supra at 745-746 ("[W]hen a manufacturer in the business of *marketing its product to an intended consumer* offers the use of the product on a trial basis in order to make a sale, OCGA § 51-1-11 can be applied in a suit for an alleged injury occurring during the trial use."). (Emphasis supplied.) However, this Court did so in the context of determining what was meant by "the term 'sold' when defining liability under strict liability for a 'manufacturer of any personal property sold as new . . . ,' " within OCGA § 51-1-11 (b) (1)'s imposition of liability. *Robert F. Bullock, Inc.,* supra at 745. As observed above, the date to be used for calculating the beginning of the statute of repose under OCGA § 51-1-11 (b) (2), and the conditions precedent for the imposition of strict liability under OCGA § 51-1-11 (b) (1) are not defined in the same terms.[4] And nothing in either the statute, or this Court's precedent, supports a conclusion that liability under OCGA § 51-1-11 (b) (1) attaches while the product remains in the hands of the manufacturer, or that the statute of repose under OCGA § 51-1-11 (b) (2) begins while the product is still in the hands of the manufacturer.[5] OCGA § 51-1-11 (b) (2) refers to the sale of the finished product to the consumer who is intended to receive it as new.[6] The statements in *Johnson* to the contrary are in error.

*Question answered. All the Justices concur.*

---

[4] The failure to recognize these differences in the statutory language has, at times, led other courts astray. See, e.g., *Davis v. Brunswick Corp.,* 854 FSupp. 1574, 1585 (N.D. Ga. 1994).

[5] In particular, it must be noted that the date of Altec's testing of the cylinder not only does not mark the commencement of the repose period, it has no relevance to the imposition of liability under OCGA § 51-1-11 (b) (1); that subsection imposes liability only when the product as "*sold* by the manufacturer was not *merchantable and reasonably suited* to the use intended . . . ." (Emphasis supplied.) The statute does not authorize the imposition of strict liability for events that occur during the manufacturer's testing of a product to determine if the product is, in fact, merchantable and reasonably suited to its intended use.

[6] No question is presented here of whether the sale substitute found in *Robert F. Bullock, Inc.,* supra, would also constitute "the first sale for use or consumption of the personal property causing or otherwise bringing about the injury" under OCGA § 51-1-11 (b) (2).

*Chambers, Aholt & Rickard, Douglas F. Aholt, Troutman Sanders, Jeffrey J. Hayward, Scott A. Farrow*, for appellants.
*Adorno & Yoss, John H. Horne, Marlo O. Leach*, for appellees.