**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2024**

# In the Court of Appeals of Georgia

A24A0313. L'OREAL USA, INC. et al v. BURROUGHS.

A24A0314. STRENGTH OF NATURE GLOBAL, LLC v. BURROUGHS.

GOBEIL, Judge.

In these related appeals, L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson, LLC, and SoftSheen-Carson (W. I.), Inc. (collectively referred to as "L'Oreal"), and Strength of Nature Global, LLC ("SON"), (and together, "Appellants"), appeal from the trial court's order denying Appellants' motions to dismiss Kiara Burroughs's complaint asserting claims for products liability, negligence, and fraud. Appellants present two primary issues for appeal: (1) Does Georgia's ten-year statute of repose for products liability actions (OCGA § 51-1-11 (b) (2)) preclude Burroughs's strict liability and/or negligence claims, when she first

purchased the products allegedly causing injury more than ten years before filing her action, but claims to have purchased new containers of the same products within ten years of filing her action? And (2) Are Burroughs's fraud claims preempted by federal law? For the reasons set forth below, we affirm in part, reverse in part, and remand the case to the trial court for further proceedings not inconsistent with this opinion.

We review the trial court's ruling on a motion to dismiss de novo, and a motion to dismiss should not be granted "unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof." *Golden v. Floyd Healthcare Mgmt., Inc.*, 368 Ga. App. 409, 410 (890 SE2d 288) (2023) (citation and punctuation omitted). "We construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." Id. (citation and punctuation omitted).

So viewed, the record in this case shows that Burroughs began using chemical hair relaxers at the age of six, and she used them continuously until she was twenty-five years old in 2014. During that time period, she purchased and used products from L'Oreal, SON, and Namaste Laboratories, LLC ("Namaste"). As described in her amended complaint, she began using SON products in 1995, and used them through

2014. She used L'Oreal and Namaste products from 2003 through 2014. She alleged that her last purchase of a chemical hair relaxer product was in 2014. In 2018, Burroughs was diagnosed with uterine fibroids, which have caused her significant health problems in the years since. In October 2022, a scientific study was released finding an association between chemical hair relaxers and uterine cancers. Publicity surrounding the study alerted Burroughs to the possibility that she may have been harmed by her use of chemical hair relaxers.

On October 27, 2022, Burroughs filed her original complaint against L'Oreal, SON, and Namaste ("Defendants"). In broad terms, she alleged that endocrine-disrupting chemicals (including phthalates) found in Defendants' products are harmful and known to adversely impact the reproductive system. She alleged that uterine fibroids "are associated with phthalate metabolites found in chemical hair straightening and hair relaxer products" and that uterine fibroids are more common among Black women, who are more likely to use chemical hair relaxing products than women of other races. As relevant here, her original complaint raised claims of strict liability (failure to warn), strict liability (design and/or manufacturing defect),

negligence (failure to warn), negligence (design and/or manufacturing defect), general negligence, negligent misrepresentation, fraud, and fraudulent concealment.[1]

Defendants all filed motions to dismiss. Namaste's motion focused on the specificity of Burroughs's allegations, arguing that she had not identified specific Namaste products she had used that allegedly caused her injuries. L'Oreal and SON also were concerned about specificity (and L'Oreal specifically moved in the alternative for a more definite statement on Burroughs's fraud claims), but they argued further that many of Burroughs's claims were barred by the statute of limitation and the statute of repose. L'Oreal argued additionally that Burroughs's negligent misrepresentation and fraud claims were preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") and its labeling requirements.

On the day Defendants' motions to dismiss were to be argued, Burroughs filed an amended complaint. The amended complaint added specificity about which products from each defendant Burroughs had used, and the chemicals found in these products she alleges caused injury. She also significantly amended her claims, listing a total of 34 counts. Broadly, she asserted five categories of claims against each

---

[1] Burroughs's original complaint included other claims that she later omitted in her amended complaint, so we do not discuss them here.

defendant: (1) strict liability - failure to warn (Counts 1-7); (2) strict liability - design/manufacturing defect (Counts 8-13[2]); (3) negligence - negligent failure to warn (Counts 14-20); (4) general negligence (Counts 21-27); and (5) fraud - fraudulent misrepresentation (Counts 28-34).

Finding that the amended complaint satisfied its concerns, Namaste orally withdrew its motion to dismiss. Appellants, however, wished to proceed on their legal arguments concerning the statute of repose, statute of limitation, preemption, and fraud. After the hearing, the trial court denied Appellants' motions to dismiss. Relevant to the issues on appeal, the trial court ruled that Burroughs's claims were timely filed under the statute of repose. As for the product liability claims, the court found that "[e]ach application of hair relaxer constituted exposure to a new product, with her last use occurring in 2014." The trial court noted that it was "the last sale of the property as new" that triggered the statute of repose, or potentially even the date of Burroughs's injury. And as for the negligence claims, the court found that an

---

[2] The counts are misnumbered at this point in the amended complaint, but this misnumbering appears to be a mere scrivener's error and does not affect the substance of any of the claims.

exception in the statute of repose allowed for failure-to-warn claims outside the ten-year repose period.

The trial court also ruled that Burroughs's fraud claims were not preempted by federal law and were sufficiently pled to survive a motion to dismiss. Further, the court found further that Burroughs's fraud claims "additionally toll the . . . statute of repose . . . ." This appeal followed.[3]

There are two primary issues raised by Appellants. First, both L'Oreal and SON argue that the trial court erred in concluding that the statute of repose did not bar Burroughs's products liability and general negligence claims. Second, L'Oreal (alone) contends that Burroughs's fraud claims are preempted by federal statutes. (However, in its reply brief, SON also makes this argument.)

1. *Statute of Repose*

(a) *Strict Liability and "First Sale"*

In Georgia,

---

[3] Appellants obtained certificates of immediate review from the trial court, and we granted Appellants' applications for interlocutory appeal. See Case Nos. A23I0259, A23I0264 (July 10, 2023).

[t]he manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

OCGA § 51-1-11 (b) (1). For product liability claims, Georgia's statute of repose states that no action "shall be commenced . . . with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." OCGA § 51-1-11 (b) (2). Subsection (c) extends the statute of repose to negligence claims against manufacturers, subject to certain exceptions (discussed in more detail below). "The purpose of OCGA § 51-1-11 (b) (2) was to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting." *Johnson v. Ford Motor Co.*, 281 Ga. App. 166, 168 (637 SE2d 202) (2006) (citation and punctuation omitted), overruled on other grounds by *Campbell v. Altec Indus.*, 288 Ga. 535 (707 SE2d 48) (2011).

As the Georgia Supreme Court has explained, under Georgia's statute of repose, "strict liability actions filed more than ten years after the date of the first sale for use or consumption of the product are completely barred." *Chrysler Corp. v. Batten,* 264 Ga. 723, 725 (2) (450 SE2d 208) (1994) (citation and punctuation omitted). Indeed the statute of repose may extinguish a cause of action before it even accrues or destroy a previously existing right of action so that it no longer exists. See *PTI Royston, LLC v. Eubanks*, 360 Ga. App. 263, 267-268 (1) (861 SE2d 115) (2021). If applicable, "[a] statute of repose stands as an unyielding barrier to a plaintiff's right of action." Id.

Appellants assert that the trial court's conclusions regarding the statute of repose are erroneous and include either misunderstandings or misstatements of law. They argue that, because Burroughs does not contest that she first began purchasing and using their products in 1995 (SON) and 2003 (L'Oreal), the statute of repose began running in those years, and lapsed in 2005 and 2013, respectively, many years before she brought this action in 2022. Appellants contend that the statute does not support a reading that each container of a product constitutes a new "first sale," but

that it is a plaintiff's first purchase of a product they might purchase many times later that triggers the commencement of the statute of repose.

First, we agree with Appellants that the trial court's reasoning is flawed.[4] The trial court's first conclusion that "[e]ach application of hair relaxer constituted exposure to a new product" is not grounded in the statute. The statute does not reference application/use of the product, but rather "first *sale* for use or consumption." OCGA § 51-1-11 (b) (2) (Emphasis supplied.) See also *Davis v. Brunswick Corp.*, 854 FSupp. 1574, 1584 (II) (B) (N.D. Ga. 1993), overruled in part on other grounds by *Lewis v. Brunswick Corp.*, 107 F3d 1494 (11th Cir. 1997) (applying Georgia's statute of repose to claims of injury from allegedly defective boat design; when boat was picked up or registered by consumer was irrelevant because the date of sale, although not definitively established, was early enough that the statute of repose had run before plaintiff filed lawsuit).

The trial court's reference to the "last sale of the property as new" as being the "sale which triggers the commencement of the statute of repose" and its reliance on

---

[4] We also note that Burroughs appears to make no effort to defend the reasoning set forth in the trial court's order. She instead notes that the court's order may be affirmed if right for any reason.

*Campbell*, 288 Ga. at 535, is misplaced. In *Campbell*, we held that it is the "last sale" of a finished product (containing multiple component parts) to the consumer that is the relevant sale – versus any inter-manufacturer sales of the component parts to other manufacturers who would assemble the product. Id. at 538. Thus, *Campbell* does not support the trial court's conclusion that it is the last of multiple sales of the same, finished product to one consumer that triggers the statute of repose.

Finally, the trial court's conclusion that the statute of repose could "also potentially run from the date of [Burroughs's] injury in 2018" is a misstatement of law. Unlike a statute of limitations, a statute of repose is not triggered by the injury. See *Wright v. Robinson*, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993) ("A statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered.") (citation and punctuation omitted); *Golden*, 368 Ga. App. at 418 (3) (a) ("[a] statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. A statute of repose stands as an unyielding barrier to a plaintiff's right of action." (citation and

punctuation omitted)). Accordingly, we agree with Appellants that the trial court's order does not support its denial of Appellants' motions to dismiss.

Outside of the reasons stated in the trial court's order, however, we still could affirm the trial court's denial of Appellants' motions to dismiss if it is right for any reason — so long as the legal basis for affirmance is "apparent from the record [and] was fairly presented in the court below." *Bailey v. Hall*, 267 Ga. App. 222, 223 n. 1 (599 SE2d 226) (2004). That said, we do not find a compelling reason to do so in this case.

Both Appellants rely on *PTI Royston*, 360 Ga. App. at 263, and we are persuaded by the reading of the statute set forth in that case. *PTI Royston* involved claims arising from the use of baby powder containing talc. Id. at 263. The plaintiff had used talc-containing baby powder manufactured by the defendant since 2005, and was diagnosed with ovarian cancer in 2016. Id. at 263-264. In 2019, she brought strict liability claims against the defendant for failure to warn, manufacturing defect, and design defect. Id. at 264. The defendant moved to dismiss the action, asserting that the ten-year statute of repose set forth in OCGA § 51-1-11 (b) (2) barred her claims. Id. The trial court denied the motion to dismiss, finding that the statute of limitation

set out in the Asbestos Claims and Silica Claims Act (the "Asbestos Act") barred the application of the general tort statute of repose. Id.

We reversed the trial court's judgment, ultimately holding that nothing in the Asbestos Act overrode the statute of repose. *PTI Royston*, 360 Ga. App. at 266-271 (1). Accordingly, the statute of repose applied to claims arising from asbestos exposure. Id. However, we remanded the case to allow the trial court to determine in the first instance whether the defendant could be equitably estopped from raising the statute of repose as a defense based on fraud. Id. at 271-272 (2).

L'Oreal argues that our holding in *PTI Royston* assumes that, if not for the estoppel issue remaining open for the trial court, the ten-year statute of repose otherwise would have barred the plaintiff's claims — because the plaintiff admitted that the "first sale" of the defendant's talc-containing product occurred in 2005 and she did not file her lawsuit until 2019.[5] Although we did not explicitly find that the plaintiff's claims were barred by the statute of repose in *PTI Royston*, we agree that our

---

[5] Although not necessarily at issue in *PTI Royston*, we note that there were no allegations in that case that the formulation of the defendant's products had changed during the time period in which the plaintiff purchased the products — or that the product had, for instance, become contaminated. Similarly, there are no such allegations in the instant case.

holdings implicitly rely upon that conclusion (given the facts of that case). If the plaintiff's subsequent purchase of the defendant's products in later years (up through 2016) reset the statute of repose, there would have been no need to consider its application with the Asbestos Act because she would have been well within ten years from her last purchase of a product. Further, there would have been no need to remand the case to the trial court to consider equitable estoppel: if the plaintiff's repose period had been reset by her last purchase in 2016, she would not have to prove fraud to the trial court because the 2019 lawsuit would have been timely.

We also addressed this argument in footnote 3, where we noted that the parties disagreed about when the Asbestos Act's statute of limitation began to run. *PTI Royston*, 360 Ga. App. at 264 n. 3. However, we ultimately chose not to answer the question because, "if the statute of repose applies," (which we found that it did), the plaintiff's claims would be barred by the statute of repose under any of her statute-of-limitation dates, because she first purchased the defendant's product in 2005, and she did not file her complaint until 2019. Id. This language lends support to finding that

our Court in *PTI Royston* did not believe that plaintiff's subsequent purchases of the talc-containing product reset the statute of repose period.[6]

Further, now considering the question explicitly in this case, such assumption from *PTI Royston* is logical given the statutory context and other precedent surrounding our statute of repose. Burroughs construes the OCGA 51-1-11 (b) (2) as resetting the statute of repose every time the consumer purchases a new container of product. She points to the end of the provision, ten years from the date of the first sale of the "property causing or otherwise bringing about the injury." OCGA § 51-1-11 (b) (2). She argues that each sale of the product "as new" begins a new repose period, and it ultimately becomes a question of causation — the plaintiff has to prove that it was a bottle purchased within the repose period that caused the injury. According to

_____

[6] We acknowledge that an Illinois federal district court, applying Georgia law, found that the statute of repose began to run at the plaintiff's last consumption of a drug. *Paulsen v. Abbott Laboratories*, 563 F.Supp.3d 787, 791 (III) (A) (1) (N. D. Ill. 2021). However, at the outset, federal district court opinions are not binding on this Court. *Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 415 n. 4 (1) (664 SE2d 788) (2008). Further, in *Paulsen*, the plaintiff's product liability action was not brought until more than ten years after her last consumption of the drug, so there was no need for the court to consider the question now before us: Had her action been brought more than ten years from her first purchase of the drug, but less than ten years from her most recent purchase of the drug, would her claim be barred? Thus, the issue was not squarely before the court in *Paulsen*, and we do not find it persuasive here.

Burroughs, even if that causation question is difficult to prove, it would be sufficient to survive a motion to dismiss.

We disagree, however, and find that the statute supports the Appellants' interpretation that it was Burroughs's first purchase of the allegedly injurious products in 1995 and 2003, respectively, that triggered the repose period in this case. First, the statute indeed uses the words "first sale" to indicate when the repose period begins to run, and Defendants' first sale of the allegedly injury-causing products to Burroughs was in 1995 (SON) and 2003 (L'Oreal and Namaste). See *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant.") (citation and punctuation omitted). And had the General Assembly intended the trigger to be "any sale (of the product as new)" versus the "first sale," it could have so stated. Further, if we were to construe the statute in the manner advanced by Burroughs, it would render "first" mere surplusage. And, it is "no more the court's function to revise by subtraction than by addition." See ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (1st ed. 2012). ("If possible, every word and every provision is

to be given effect. . . . None should needlessly be given an interpretation that causes it to duplicate another provision or have no consequence."); *Kennedy v. Carlton*, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014) (statutes are to be construed to "avoid[] a statutory construction that will render some of the statutory language mere surplusage") (citation omitted). Finally, the "personal property causing or otherwise bringing about the injury" in this case are the hair relaxer products sold by Defendants. Burroughs made no allegations that the products changed in formulation, composition, or otherwise during the time in which she purchased and used various containers of the products. She also made no allegations that the containers of the products purchased within ten years of the filing of her complaint are the ones that caused her injury. Our analysis might be quite different had she made such allegations, but she did not. And, under the statute and our prior discussion of the statute of repose, we are compelled to conclude that Burroughs's strict-liability claims were due to be dismissed because she "cannot introduce evidence within the framework of [her] complaint to show" that she can bypass the statute of repose. *Villa Sonoma at Perimeter Summit Condo. Assn., Inc. v. Commercial Indus. Bldg. Owners Alliance, Inc.*, 349 Ga. App. 666, 666 (824 SE2d 738) (2019). Accordingly, we reverse the trial

court's judge in part to the extent it denied Appellants' motions to dismiss Burroughs's strict liability - design/manufacturing defect claims.

(b) *Negligence*

Burroughs argues that, even if her strict liability claims are barred by the statute of repose, her negligence claims survive under exceptions listed in the statute. We agree.

The statute of repose also applies to actions claiming negligence of a manufacturer as the basis of liability

> except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

OCGA § 51-1-11 (c).

The parties do not dispute that the final sentence in this statute applies to Burroughs's negligent failure-to-warn claims (Counts 14-20), and thus the trial court correctly denied the motions to dismiss as they pertained to the counts (and the order

17

is affirmed to this extent). *Chrysler Corp.,* 264 Ga. at 727 (4) ("the legislature carefully excluded failure-to-warn causes of action from the statute of repose"). Indeed, in *Chrysler Corp.*, we addressed the potentially harsh consequences that might result from the statute of repose in a case such as Burroughs's, noting that this exception

> reflects the legislature's recognition of the possibility that this duty [to warn] may not emerge until long after the statute of repose has extinguished any cause of action arising out of the product's sale; that the duty to warn arises once the danger becomes known reflects the existing case law with its actual or constructive knowledge standard.

Id. at 727 (4).

The parties disagree, however, concerning whether Burroughs's general negligence claims (Counts 21-27) are excepted from the statute of repose. Appellants argue that the exception allowing claims "arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect" applies only to claims of negligence in the manufacturing process, as opposed to in the design, testing, or other parts of the product creation process.

The statutory text is not so limited, and our Supreme Court has described this exception broadly. See, e.g., *Chrysler Corp.*, 264 Ga. at 725 (2) ("where the

18

manufacturer's negligence resulted in a product causing disease or birth defect");

*Love v. Whirlpool Corp.*, 264 Ga. 701, 702 (1) (449 SE2d 602) (1994) (describing the exception as allowing claims "in which it is alleged that the manufacturer's negligence resulted in a product causing disease or birth defect"). Given that this is the most natural and reasonable interpretation of the statute, that is the meaning we attribute to it. *Herrington v. State*, 364 Ga. App. 186, 189 (2) (874 SE2d 389) (2022). This interpretation of the statute is further supported by our holding in *Fletcher v. Water Applications Distribution Group, Inc.*, 333 Ga. App. 693 (773 SE2d 859) (2015), reversed in part on other grounds by *Certainteed Corp. v. Flether*, 300 Ga. 327 (794 SE2d 641) (2016). In *Fletcher*, we noted that a negligent design defect claim (that we specifically held was not a negligent manufacturing claim) was "not barred by the statute of repose" because the plaintiff claimed "that she suffers from a disease allegedly caused by the [defendant's] negligence." 333 Ga. App. at 696 n. 1.

Further, the Supreme Court has described that the intent of this exception "was to afford relief to plaintiffs whose claims are based on certain types of injury the latent effects of which may not be manifest for many years." *Love*, 264 Ga. at 704 (1). Accordingly, we conclude that the statute contemplates a manufacturer's liability

outside of the products-liability statute of repose for such negligence that results in a product causing disease or birth defect. These are just the type of allegations made in this case. Thus, we affirm the trial court's order to the extent it denied Appellants' motions to dismiss Burroughs's negligence claims.

(c) *Estoppel*

Finally, we address the trial court's finding that Burroughs's claims of fraud "toll[ ]" the statute of repose. "Although it is well settled that a statute of repose cannot be tolled, there are narrow circumstances in which a defendant may be equitably estopped from raising the statute of repose as a defense." *PTI Royston*, 360 Ga. App. at 271 (2) (citation and punctuation omitted). Particularly, if "evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the trier of fact to exist, then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of ultimate repose." Id. at 272 (2) (citation and punctuation omitted). "In order for this to apply, however, a plaintiff must show fraud by offering evidence of a known failure to reveal negligence." *Smith v. Kayfan*, 364 Ga. App. 651, 654-655 (874 SE2d 465) (2022) (citation and punctuation omitted).

As described below in Division 2, Burroughs raised claims of fraudulent misrepresentation alleging that Defendants misrepresented that their products were safe and effective while knowing that they were not. Given our discussion below, the trial court must resolve this issue in the first instance on remand. See *PTI Royston*, 360 Ga. App. at 271-272 (2).

2. Next, L'Oreal contends[7] that Burroughs's fraud claims are preempted by federal law. For the reasons that follow and parsing the specifics of Burroughs's allegations, we agree in part and disagree in part. The FDCA contains an express preemption provision, 21 USC § 379s (a), stating that the federal law preempts "any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." L'Oreal argues that Burroughs's fraud claim (and her general negligence claim to the extent it alleges negligent misrepresentation) is alleging that L'Oreal was required to provide different

---

[7] SON argues that Burroughs's fraud claims "were not properly before the [trial] court, in light of" Burroughs's first amended complaint. In its reply brief, SON reiterates this statement, essentially adopts L'Oreal's argument as to preemption, and also argues that Burroughs's fraud claims were not pleaded with the particularity necessary to survive a motion to dismiss.

information on its label than is required by the federal law – thus attempting to impose additional requirements for its label in violation of preemption principles.

As an initial matter, "[s]tate law is naturally preempted to the extent of any conflict with a federal statute" and courts "will find preemption where it is impossible for a private party to comply with both state and federal law, and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat. Foreign Trade Council*, 530 U. S. 363, 372 (III) (120 SCt 2288, 147 LE2d 352) (2000) (citations and punctuation omitted). Further, state law claims that are preempted by federal law are properly dismissed. See *Eason v. Marine Terminals Corp.*, 309 Ga. App. 669, 671 (1) (710 SE2d 867) (2011).

Here, we agree with Burroughs that her fraud claims are not limited simply to allegations of incomplete labeling or inaccurate statements of ingredients that would conflict with the FDCA. Rather, she alleges, at least in part, that Defendants have misrepresented the use of their products as safe and effective through affirmative product claims. For example, Burroughs alleges that SON intentionally advertises its products as "Botanicals" with "Natural" ingredients that are "Ultra Nourishing"

as a way to mislead consumers into believing its products are safe and effective. That these statements also appear on the product packaging does not automatically mean federal labeling requirements preempt her claims.

The Supreme Court of Georgia has distinguished misrepresentation claims from "inadequate warning" claims in assessing the preemptive effect of FDA regulations. In *Poloney v. Tambrands*, a case involving a tampon manufacturer's alleged failure to warn of the risks of toxic shock syndrome, the Court held that although the plaintiffs' medical device product-liability failure-to-warn claims were preempted by the federal warning label requirements, it was "important to note" that the plaintiffs' misrepresentation claims were not preempted (although they were not sufficient to withstand summary judgment). 260 Ga. 850, 852 (1) (412 SE2d 526) (1991). Thus, to the extent Burroughs's fraud claims are based on affirmative misrepresentations made by Defendants,[8] they are not preempted. See *Smith v. Hi-Tech Pharmaceuticals, Inc.*,

[8] We do note the specificity of our holding in this case. We agree with L'Oreal that to the extent Burroughs seeks to use her fraud claims to allege that Defendants "intentionally failed to disclose the presence of" (as explained in her appellate brief) or "[k]nowingly made omissions" of (as alleged in the amended complaint) certain chemicals she alleges are harmful, those allegations are preempted by federal law, as she would be seeking to impose a requirement on a cosmetic manufacturer above and beyond what is required by federal law. And to the extent the trial court order found that "nothing in the FDCA or other federal rules prohibits Defendants from

364 Ga. App. 476, 483-484 (1) (875 SE2d 454) (2022) (plaintiff's misrepresentation claim based on packaging statement that the product was a "synergistic blend of potent herbal derivatives" was not preempted by FDCA because "plaintiff was not asking defendant to modify or enhance any aspect of its cosmetics labels that are required by federal law but rather claiming deception as a result of advertising statements" (quoting *Astiana v. Hain Celestial Group*, 783 F3d 753, 757-758 (I) (9th Cir 2015))).

And, also under *Smith*, to the extent Burroughs seeks to recover damages for Defendants' false or misleading labeling, such misrepresentation is also prohibited under the FDCA. Thus, to the extent Burroughs is not seeking to impose any different or additional requirement than that imposed by federal law, she avoids preemption. 364 Ga. App. at 484 (1) (because plaintiff's "claims under the [state law] mirror the FDCA requirement that labels be truthful and not misleading, they escape express preemption"); 21 USC §§ 331 (a) (prohibiting the "introduction into interstate

---

disclosing the chemicals comprising the fragrance in their hair relaxer products to Plaintiff[,]" such finding is disapproved by this Court. Defendants are subject to the labeling requirement of the FDCA, and Burroughs's state-law based fraud claim cannot seek to penalize Defendants for omitting information not required to be disclosed by federal law. Such a claim would run afoul of the preemption principles discussed herein. See 21 U.S.C. § 379s (a).

commerce of . . . any . . . cosmetic that is . . . misbranded), 362 (a) (1) (cosmetic is misbranded if "its labeling is false or misleading in any particular"). Again, the federal preemption statute does not allow Burroughs to base her claims on labeling "omissions" that Appellants are not required to include under the FDCA, supra FN 8, but it does allow her state-law claims - as asserted - to survive insofar as they mirror the requirements of the FDCA.[9]

Even though we conclude that Burroughs's fraud claims are not entirely preempted by federal law, Burroughs's allegations against L'Oreal still fail to adequately state a claim of fraud. Although Burroughs alleges generally that L'Oreal "fraudulently misrepresented the use of the Products as safe and effective," she includes no affirmative statements made by L'Oreal that are alleged to be false. At most, she alleged that some hair relaxer companies used photographs of girls on their packaging that did not actually use the products, but she does not even allege that L'Oreal engaged in this practice. Accordingly, the trial court erred in denying L'Oreal's "Motion to Dismiss or, in the Alternative, for a More Definite Statement"

---

[9] The parties do not assert that the specific, affirmative claims at issue here bear the imprimatur of FDA or other Federal regulatory agency approval. Accordingly, we do not consider whether any such assent might alter our conclusion concerning labeling or advertising claims.

as to these claims. See OCGA § 9-11-9 (b) ("In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity."); *Osprey Cove Real Estate v. Towerview Constr.,* 343 Ga. App. 436, 441 (3) (808 SE2d 425) (2017) (where complaint lacked "any allegation concerning a fraudulent statement by" defendant, complaint did not properly plead fraud claim). However, "the proper remedy to address such deficiencies in pleading is a motion for a more definite statement, not a dismissal of the complaint or judgment on the pleadings, at least so long as the plaintiff is able and willing to amend [her] pleadings to conform to the statutory requirements." Id. (citation and punctuation omitted). We therefore reverse the trial court's judgment to the extent that it denied L'Oreal's alternative motion for a more definite statement that would require Burroughs to provide additional information to satisfy OCGA § 9-11-9 (b)'s requirement for particularity in fraud pleadings. On remand, the trial court must order a more definite statement from Burroughs to satisfy the pleading requirement.

Burroughs's fraud claims against SON and Namaste do include allegations of affirmative misrepresentations on the packaging of those defendants' products. Thus,

the trial court properly denied SON's motion to dismiss in this regard and that portion of the trial court's order is affirmed in part as described above.

Accordingly, for all of the reasons stated herein, we affirm in part and reverse in part the trial court's judgment, and we remand this case to the trial court for further proceedings as described above.

*Judgment affirmed in part, reversed in part, and remanded with instructions. Barnes, P. J., and Pipkin, J., concur.*