NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 15, 2025

S24G1387.  BURROUGHS v. STRENGTH OF NATURE GLOBAL, LLC.
S24G1388.  BURROUGHS v. L'OREAL USA, INC. et al.

PINSON, Justice.

Georgia law imposes strict liability on manufacturers of products that cause injury because of their condition when sold. OCGA § 51-1-11(b)(1). Georgia law also puts an outer limit on when an action for strict products liability may be brought: no such action may be commenced "with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." Id. § 51-1-11(b)(2). Applying this statute of repose is straightforward enough when a person claims that a single product caused their injury. As we have explained before, the action is barred if the product in question was sold as new to its intended end user on a date more than

ten years before the action was filed. *Campbell v. Altec Indus., Inc.*, 288 Ga. 535, 537–38 (2011).

But in this case, the plaintiff alleges that she bought and used a particular product — chemical hair relaxer — many times over many years, which caused her to develop uterine fibroids. In those circumstances, the manufacturers of the products she used contend that the statute of repose does not apply to each "unit" of a product sold, but that the units instead must be treated as a group, and the statute of repose for that entire group starts running from the earliest sale in the series of sales of those units to the plaintiff. The Court of Appeals agreed, and on that basis held that the strict products liability claims in this case must be dismissed. We granted review to consider how the statute of repose set out at OCGA § 51-1-11(b)(2) applies to an action like this one, where a plaintiff alleges that her injury was caused by multiple consumable products sold to her over time.

1. *Background*

According to her complaint,[1] around 1995, Kiara Burroughs bought and started using certain hair-relaxer products. She bought and used one such product, manufactured by Strength of Nature, from 1995 until 2002; a different Strength of Nature product from 2003 until 2007; and a third such product from 2007 until 2014. She also bought and used two different L'Oreal hair-relaxer products from 2003 until 2014. All told, she applied these hair-relaxer products every six to eight weeks from 1995 to 2001 and then from 2002 to 2014.[2]

In March of 2018, Burroughs was diagnosed with uterine fibroids. Burroughs's mother had a "history of fibroids" and had also used hair relaxers, and after learning about a study "linking the use of chemical hair straightener or relaxer and uterine cancer," which was released and publicized in October 2022, Burroughs sued

---

[1] Because this case comes to us on review of the trial court's denial of a motion to dismiss, we accept as true the factual allegations set out in the complaint and resolve all doubts in favor of Burroughs. See *Norman v. Xytex Corp.*, 310 Ga. 127, 128 (2020).

[2] Burroughs alleges in her complaint that she "briefly stopped using" hair relaxers for one year, from 2001 to 2002.

Stregth of Nature and L'Oreal on October 27, 2022.[3]

In her lawsuit, Burroughs alleged that the hair-relaxer products she used that were manufactured by L'Oreal and Strength of Nature contained phthalates and other endocrine-disruptive chemicals that increased the risk of developing diseases including uterine fibroids, cancer, and endometriosis. Among other claims, she alleged that L'Oreal and Strength of Nature were liable for her injury under OCGA § 51-1-11(b)(1) because their hair-relaxer products when sold were not merchantable or reasonably suited to their intended use, and that the condition of those products when sold — that is, the inclusion of phthalates and other endocrine-disruptive chemicals in the hair relaxers — proximately caused her uterine fibroids.

Strength of Nature and L'Oreal each moved to dismiss Burroughs's claims under OCGA § 51-1-11(b)(1), arguing that because Burroughs first bought a Strength of Nature hair relaxer in 1995, or 27 years before she sued, and first bought a L'Oreal hair relaxer in

---

[3] Burroughs also sued another manufacturer, Namaste Laboratories, LLC, which is not a party to this appeal.

4

2003, or 19 years before she sued, these claims were barred by the ten-year statute of repose. See OCGA § 51-1-11(b)(2) ("No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury."). The trial court denied the motions to dismiss but granted a certificate of immediate review.

On interlocutory review, the Court of Appeals reversed the trial court's denial of the motion to dismiss based on the statute of repose. *L'Oreal USA, Inc. v. Burroughs*, 372 Ga. App. 30 (2024). The court reasoned that OCGA § 51-1-11(b)(2) "uses the words 'first sale' to indicate when the repose period begins to run, and Defendants' first sale of the allegedly injury-causing products to Burroughs was in 1995 (S[trength of Nature]) and 2003 (L'Oreal and Namaste)." Id. at 37. In other words, the Court of Appeals concluded that the statute of repose started to run at the earliest date that Burroughs bought any hair-relaxer product from each manufacturer, and that was the

only repose period relevant to her lawsuit. See id. Because Burroughs sued the manufacturers more than ten years after those earliest sales, the Court of Appeals concluded her claims were barred by the ten-year statute of repose. Id. The court explained that its "analysis might be quite different" if Burroughs had alleged "that the containers of the products purchased within ten years of the filing of her complaint are the ones that caused her injury," but that she had not done so. Id.

We granted review to determine how the statute of repose set out at OCGA § 51-1-11(b)(2) applies to an action like this one, where a plaintiff alleges that her injury was caused by multiple consumable products sold to her over many years.

2. *Analysis*

To answer this question of statutory construction, we start with the relevant statute. Speaking generally, OCGA § 51-1-11(b)(1) imposes strict liability on manufacturers of products that cause injury because of their "condition when sold." See *Ellis v. Rich's, Inc.*, 233 Ga. 573, 577 (1975) (explaining that the predecessor to § 51-1-

6

11(b)(1) imposes strict liability on product manufacturers). That provision makes manufacturers of "any personal property" sold "as new" liable in tort to people who are injured "because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." OCGA § 51-1-11(b)(1).

The next subsection, (b)(2), sets out the statute of repose: an "outside limit on the bringing of lawsuits" that applies regardless of when an injury or harm is discovered or a cause of action accrues. *Colormatch Exteriors, Inc. v. Hickey*, 275 Ga. 249, 252 (2002) (citation omitted). See also *Campbell*, 288 Ga. at 536 (explaining that OCGA § 51-1-11(b)(2) "establishes a period of ultimate repose within which such a right of action must accrue" and that "beyond the period set forth in a statute of repose, the cause of action simply does not exist"). Under that subsection, "[n]o action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." OCGA §

7

51-1-11(b)(2). Put another way, this provision explains when the statute of repose — the time period in which this kind of action must be brought, if it is to be brought at all — begins and ends. That repose period begins on "the date of the first sale for use or consumption" of "the personal property causing or otherwise bringing about the injury." Id. And it ends "ten years from" that date. Id.

This Court has already construed some of the key statutory language that establishes when the statute of repose begins to run. In *Campbell*, we explained that OCGA § 51-1-11(b)(2)'s "first sale for use or consumption" language marks the start of the repose period by identifying a particular point in the product's retail chain. That point, we held, was not the date that the product was "last in the hands of the manufacturer," but instead the date of "the end sale of the product as new." *Campbell,* 288 Ga. at 537. In other words, the "first sale *for use or consumption*" refers to the sale of the product to the "end user," that is, the person "whose actual employment of the product was ultimately intended." Id. at 536–38 (quoting *Pafford v.*

*Biomet*, 264 Ga. 540, 542 (1994)). And the phrase "*first* sale" indicates that the key sale is the sale to that intended end user "as new," rather than any further resale of the product beyond that point (as used or otherwise). *Campbell*, 288 Ga. at 536–38. This legislative choice, we reasoned, made sense in light of subsection (b)(1), which imposes liability on a manufacturer who sells a product "'directly or through a dealer or any other person as new," so that, "regardless of any chain of middlemen, the end sale of the product as new is what brings the manufacturer within the ambit of OCGA § 51-1-11(b)(1), if the other conditions for imposing liability exist." Id. at 537. Put simply, under OCGA § 51-1-11(b)(2), the statute of repose for a given product begins to run on the date it is sold as new to the intended end user.

But it is undisputed that Burroughs was an intended end user of the hair-relaxer products sold to her, so the question in this case is not which sale *in the retail chain* started the clock on the statute of repose. Instead, the question is how to apply the statute of repose when multiple units of a manufacturer's product are sold to the

same person over time, and that person alleges that more than one such unit is potentially involved in causing them injury.

The Court of Appeals below and the manufacturers contend that, in such circumstances, the way to apply the statute of repose is to treat all of those units sold to a person over time as a unified group, and then start the statute of repose running on the date of the earliest-in-time sale of a unit within that group. In other words, the group of units sold to a person over time would have a single ten-year statute of repose that begins when the first unit in that group was sold to that person. In support of this theory, the manufacturers point to the statutory language that identifies "the personal property causing or otherwise bringing about the injury" as the property to which the statute of repose applies. See OCGA § 51-1-11(b)(2) ("No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of *the personal property causing or otherwise bringing about the injury*." (emphasis added)). They reason that if more than one unit of a product is involved in bringing about the

injury, then "the personal property" referred to in that provision must be the group of such units. And of that group of units, the "sale" that starts the group's single statute of repose must be the earliest sale of a unit to an intended end user, because the statute says the statute of repose starts to run on the "first sale for use or consumption" of "the personal property" in question. See *Burroughs*, 372 Ga. App. at 37. On that view, if multiple units are sold to an end user over (say) a span of 15 years, the statute of repose would begin with the earliest sale of a unit to the end user 15 years ago, and the statute of repose would therefore bar any action with respect to an injury that happened more than 10 years after the sale of that first unit, even if other units were sold to that end user less than ten years before the action was filed.

Whatever its surface appeal, this theory of construction falls apart on closer inspection. The manufacturers correctly recognize that if "the personal property" in question can be a *group* of units that were sold at different times, the statute would have to give us a way to pick a single sale from the chain of sales of units to start

the statute of repose for that group. In their view, the statute's "first sale for use or consumption" language plays that role. But our precedent says otherwise. We have already held that the "first sale for use or consumption" language identifies *which sale in a product's retail chain* starts the clock for the statute of repose. See *Campbell*, 288 Ga. at 538. As we explained in *Campbell*, the sale of a product "for use or consumption" is its sale to an "intended end user," and the word "first" specifies that it must be the sale of the product "as new" to an end user, rather than a resale. See id. ("[I]t is the last sale of the property as new that is most closely associated with [the intended consumer's] use, and it is that sale which triggers the commencement of the statute of repose found in OCGA § 51-1-11(b)(2)."). In other words, the role of the word "first" in this provision is to indicate which sale of a particular unit triggers the statute of repose in a world where that unit may be sold multiple times.[4] If that is

---

[4] This is why the word "first" is not superfluous, as the manufacturers suggest. That word makes clear that if a product is sold "for use or consumption" more than once, the statute of repose begins running on the first of those sales. To be sure, resales of a product meant to be "consum[ed]" could be rare,

12

what "first" does in this provision — and it is — then there is no room for the manufacturers' view that the word "first" in this provision specifies which sale in a chain of sales to the same end user starts the statute of repose for the entire chain. That word cannot simultaneously carry a second, entirely different meaning and purpose, like a linguistic chameleon that changes its meaning and purpose on the fly depending on the facts of the case. Simply put, this is not how language works. Cf. *United States v. Santos*, 553 US 507, 522 (2008) ("[T]he meaning of words in a statute cannot change with the statute's application."); *Clark v. Martinez*, 543 US 371, 382 (2005) ("We find little to recommend the novel interpretive approach advocated by the dissent, which would render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case."); *United States v. Nippon Paper Indus. Co., Ltd.*, 109 F3d 1, 4 (1st Cir. 1997)

---

but it is not that hard to imagine the resale of a consumable product. And in any event, "first" modifies "sale for use *or* consumption." Even if resales of consumable goods may be rare, resales of other kinds of products are not. Including the word "first" ensures that the sales "as new," and not those possible resales, start the repose clock. See *Campbell*, 288 Ga. at 537–38.

(explaining that "[w]ords may sometimes be chameleons, possessing different shades of meaning in different contexts, but common sense suggests" that "the same language in the same section of the same statute" should carry the same meaning whether it is interpreted in a criminal prosecution or a civil action (citations omitted)).

Thus, the "first sale" language does not, as the manufacturers contend, identify the sale that starts the statute of repose from among a chain of sales at different points in time. And seeing no other language in this provision that could serve that role, we must rule out the manufacturers' theory that "the personal property" to which the statute of repose applies can be understood as a unified group of units sold at different times. Instead, "the personal property causing or bringing about the injury" necessarily refers to any single unit alleged to have been sold as new to an intended end user. And the upshot of that conclusion is that the statute of repose is applied on a per-unit basis. In other words, OCGA § 51-1-11(b)(2) creates a ten-year statute of repose that begins to run on each sale of a unit as new to an intended end user.

14

What does this mean for applying the statute of repose in a case like this one, where a plaintiff alleges that she was injured by multiple units of a product sold to her at multiple points in time? First and foremost, it means that the statute of repose does not bar a claim for strict product liability merely because a plaintiff alleges that one or more of the units in question were sold to an intended end user more than ten years before she brought the action. To be sure, with respect to any such units, a cause of action against the manufacturer "simply does not exist." *Campbell*, 288 Ga. at 536. But because the statute of repose applies to each unit, a cause of action still may exist for units sold to an intended end user less than ten years before the action was brought.

This does not mean that a plaintiff who brings such an action has an easy road to proving her claim. As Burroughs acknowledges, that plaintiff still has the ultimate burden to prove her claim with respect to the units sold as new to an intended end user within ten years of the date the action was brought — including that the con-

dition of those units for which the statute has not run was "the proximate cause of the injury sustained." OCGA § 51-1-11(b)(1). Such proof may be (as Burroughs puts it) a "tricky undertaking" when a significant portion of the units the plaintiff used or consumed were sold to an intended end user outside the repose period. [5]

But questions about what may ultimately be required to prove causation or other elements in such an action exceed the scope of our review here, which is limited to determining whether the statute of repose bars a claim like this one at the pleadings stage. A motion to

---

[5] In an action involving an injury potentially caused by multiple products sold at different times, one could imagine a number of combinations of theories of causation and injury. For instance, a plaintiff may assert that the injury was caused by use or consumption of products that accumulated over time, or that continued use of or exposure to a product caused, or accelerated, or aggravated, one or more discrete or divisible injuries over time. See, e.g., *PTI Royston LLC v. Eubanks*, 360 Ga. App. 263, 263–64 (2021) (plaintiff claimed her 2016 diagnosis of ovarian cancer was caused by her daily use of baby powder containing talc for more than four decades); *Hadley v. Astra Zeneca Pharms., PLC*, No. 18-cv-1068-JPG-DGW, slip. op. at 1 (SD Ill. Sept. 19, 2018) (2018 WL 4491184) (not reported) (plaintiff claimed he was injured by taking a psychotropic drug from 2002 to 2008); *Daughetee v. Chr. Hansen, Inc.*, 960 FSupp2d 849, 854, 861 (ND Iowa 2013) (plaintiff sued for injury she alleged was caused by her exposure to a harmful chemical in the butter flavoring of microwave popcorn, which she had consumed daily for 25 years).

dismiss for failure to state a claim must be denied unless "the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts," and "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Norman v. Xytex Corp.*, 310 Ga. 127, 130–31 (2020) (citation omitted). Burroughs's complaint here alleges — and at the pleadings stage, we must take as true, see *Milliron v. Antonakis*, 319 Ga. 616, 622 (2024) — that she bought and used the manufacturers' hair-relaxer products from sometime in 1995 until 2014 (with a brief pause between 2001 and 2002). She further alleges that she was diagnosed with uterine fibroids in March 2018, and that the manufacturers' products, some units of which were sold to her as new within the ten years before her lawsuit, caused that injury. This framework of allegations is sufficient to avoid dismissal based on the statute of repose. It is possible that Burroughs could introduce evidence within that framework proving that the condition of the units sold to her as new within the ten years before her lawsuit was the proximate cause

17

of her injury, even without relying on the causative contribution, if any, of units for which an action is barred by the statute of repose. See *Norman*, 310 Ga. at 131.[6] The manufacturers offer no serious

---

[6] We do not decide here whether a defendant manufacturer could ultimately prevail on an affirmative defense theory that the statute of repose completely bars a strict-liability claim even as to units sold to her *within* the statute of repose because the plaintiff's injury would not have occurred but for the causative contribution of units sold to her outside of the statute of repose (i.e., more than ten years before her lawsuit). In other words, if a defendant manufacturer could prove that its units sold within the statute of repose could have caused the plaintiff's injury only in combination with her use of or exposure to units of a product sold outside the statute of repose, does the statute of repose bar the entire claim, even as to the in-period units? A conclusion that such a claim would be barred by the statute of repose finds some arguable support in the statutory text, which says that "no action shall be commenced" under OCGA § 51-1-11 "after ten years from the date of the first sale for use or consumption of the personal property *causing or otherwise bringing about* the injury." OCGA § 51-1-11(b)(2) (emphasis added). To the extent that some of "the personal property" that is a necessary part of proving causation was sold outside the statute of repose, one might say that a claim that necessarily relies on that property's causative contribution to the injury must be barred by the statute. Otherwise, a manufacturer would be subject to liability based in part on their sales of units for which their ten-year period of liability has passed. That conclusion, however, would be in some tension with our construction of the statute as statute of repose that applies on a per-unit basis, which would seem to leave manufacturers open to liability for injuries caused by the condition of units sold as new to an intended end user less than ten years before a plaintiff's lawsuit. At bottom, the problems with either potential resolution of this difficult question highlight that the statutory language setting out the statute of repose here does not seem to contemplate or account for theories of liability based on a plaintiff's exposure to a combination of many units of a product over a long period of time. A legislative solution may well be better than any answer a court could come up with given the current statute.

But that difficult question of statutory construction is not ultimately presented by this case. Even assuming the statute of repose would bar a claim

18

argument that such proof would not be possible.[7]

*

For the reasons set out above, the Court of Appeals erred in reversing in part the trial court's denial of the manufacturers' motion to dismiss on the basis that the statute of repose barred Burroughs's strict liability claims.[8]

---

that relied even in part on the causative contribution of units sold outside the statute of repose, the framework of the complaint here allows for the possibility that Burroughs could prove her strict-liability claim even without relying on the causative contribution, if any, of units for which an action is barred by the statute of repose. So we need not resolve whether an ultimate failure of proof in that respect would be grounds for a defendant manufacturer to defend against the claim as a whole under the statute of repose.

[7] The Court of Appeals reasoned below that its analysis "might [have] be[en] quite different" if Burroughs had alleged "that the containers of the products purchased within ten years of the filing of her complaint are the ones that caused her injury," but that she had not done so. *Burroughs*, 372 Ga. App. at 37. But as we have just explained, by alleging that Burroughs used units of hair relaxer sold within ten years of the filing of her action, the complaint provides a "framework" of factual allegations within which evidence could be introduced that would be sufficient to prove a strict liability claim not barred by the statute of repose. The Court of Appeals' suggestion that she needed to allege a specific theory of causation tied to a specific subset of the units she alleged generally caused her injury demands more specificity than Georgia's liberal notice pleading standard requires.

[8] We do not disturb the Court of Appeals' judgment as to Burroughs's claims of negligent failure to warn, general negligence, and fraud, which remain pending. The Court of Appeals affirmed the denial of L'Oreal and Strength of Nature's motions to dismiss those claims, see *L'Oreal USA, Inc. v. Burroughs*, 372 Ga. App. 30, 39, 43 (2024), and neither L'Oreal nor Strength of Nature sought review of that affirmance.

19

*Judgment reversed in part and case remanded. All the Justices concur.*

BETHEL, Justice, concurring.

I join the well-reasoned opinion of the Court and write separately only to highlight a point not decided here. In footnote 6, the Court makes clear that we "do not decide here whether a defendant manufacturer could ultimately prevail on an affirmative defense theory that the statute of repose completely bars a strict-liability claim even as to units sold to her within the statute of repose because the plaintiff's injury would not have occurred but for the causative contribution of units sold to her outside of the statute of repose (i.e., more than ten years before her lawsuit)." (Maj. Op. at 18.) While I have serious doubts about the prospect that a claim based on a unit of personal property sold within the applicable repose period can be extinguished by the expiration of the repose period with respect to a *different unit* of personal property even if it is of the same type or kind, I agree that the resolution of this question is not essential to the resolution of this case. With that understanding of what we have not decided here, I am comfortable concurring fully.

I am authorized to state that Chief Justice Peterson, Justice Ellington, Justice LaGrua, and Justice Land join in this concurrence.